IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY - CAMDEN VICINAGE

Alyson M. Tomljenovic, Esquire
AMT (7045)
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.
1125 Atlantic Avenue - Third Floor
Atlantic City, NJ 08401
(609) 344-3161
File No. 47597 - 9
Attorneys for Defendants, South Jersey Sanitation Company, Inc. *and* Anthony Colarsurdo

| | |
|---|---|
| JAVIER ALAVEZ-LOPEZ, ANTONIO HERNANDEZ, WILLIAM TOVILLA, ALEJANDRO CONSTANTINO, ANTONIO GUTIERREZ, MARCO ANTONIO ORTEGA, on behalf of themselves and those similarly situated, <br><br> Plaintiffs <br><br> vs. <br><br> SOUTH JERSEY SANITATION CO., INC. and ANTHONY COLARSURDO, <br> Defendants. | Civil Action No. 1:10-cv-05647 (NLH/KMW) |

---

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AND IN SUPPORT OF DEFENDANTS' REQUEST FOR COUNSEL FEES**

---

Return Date: March 18, 2013

Alyson M. Tomljenovic, Esquire
AMT (7045)
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.
1125 Atlantic Avenue - Third Floor
Atlantic City, NJ 08401
(609) 344-3161
File No. 47597-9
atomljenovic@cooperlevenson.com
Attorneys for Defendants, South Jersey Sanitation Company, Inc. *and*
Anthony Colarsurdo

## TABLE OF CONTENTS

<u>TABLE OF AUTHORITIES</u> ............................................................................ iii

<u>INTRODUCTION AND FACTUAL BACKGROUND</u> ................................... 4

<u>ANALYSIS</u> ...................................................................................................... 6

    <u>The Court Should Deny Plaintiffs' Motion for Sanctions as they have Failed to Demonstrate that Defendants Intentionally Withheld any Requested Documents</u>  6

<u>CONCLUSION</u> ............................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

Bull v. UPS, 665 F.3d 68 (3d Cir. N.J. 2012) ................................................................6, 7, 8, 9

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs' motion for spoliation sanctions and counsel fees and costs is unwarranted.  As detailed below, Defendants request this court deny the instant motion and grant Defendants attorneys' fees and costs resulting from the time resources spent to respond to the same.

Initially, it was defense counsel's understanding that if a party wanted to make a discovery motion then that party should first contact the Court in order to provide the opportunity to efficiently handle any issues or conflicts that arose during the course of discovery.  Plaintiffs' counsel failed to do this.  Moreover, defense counsel had left the deposition of Mr. Anthony Colasurdo with the, clearly mistaken, understanding that Plaintiffs' counsel would afford defense counsel an opportunity to look into information regarding the Global Positioning Satellite ("GPS") system records, such as what relevant information these records could actually provide; in what form, if any, they can be provided, etc.  Regardless, Plaintiffs' counsel, without any notification to the Court or defense counsel, filed the instant motion.

With regard to the history of discovery, Plaintiffs' First Request for Production was dated May, 12, 2011, as was their Interrogatories.  Their Supplemental Request for Production is dated January 12, 2012.  (See a true and accurate copy of Plaintiffs' Discovery Requests at Exhibit "A").  Incidentally, Defendant Anthony Colasurdo did advise during his deposition that the GPS System was installed sometime in 2012.  He has since advised that the system was installed February 28, 2012.  (See a true and accurate copy of the Certification of Anthony Colasurdo at Exhibit "B" – To be provided).  Thus, despite Plaintiffs' counsel's accusations, Defendants could not have produced any records from this system "in Defendants' Rule 26 Disclosures…and [] when responding to document requests," as any such possible records did not even exist at that time.

Moreover, Defendants have not delayed discovery and have spent an enormous amount of time and resources providing Plaintiffs' counsel with all relevant documents. Defendant provided Answers to Interrogatories in September 2011. Defendants produced over one thousand documents in the form of Check Records and Employee Listings for the years 2007, 2008, 2009, 2010 and 2011 in response to Plaintiffs' First Request for Production of Documents. They have also since produced the personnel files of all Plaintiffs, as well as the weekly and daily schedules, and also the time cards for all of the drivers of the sanitations trucks, for the years 2008, 2009, 2010, 2011 and 2012, which amounted to thousands more documents. Defense counsel has deposed almost all of the named Plaintiffs. Defendants have produced Mr. Colasurdo twice to testify and Mr. Edwin Morales once. Mr. Morales deposition lasted several hours as Plaintiffs' counsel introduced the abovementioned weekly and daily schedules and drivers' timecards with respect to each Plaintiff.

By way of example, Plaintiffs' counsel selected a Plaintiff. (See true and accurate copies of excerpts of the transcript of the deposition of Edwin Morales at Exhibit "C," 82:7-11). After selecting one week, in this example the week ending February 9, 2010, counsel referred to the corresponding weekly schedule to demonstrate that, according to the same, the subject Plaintiff purportedly worked certain days in that week. (See Exhibit C, 82:11-16; see also a true and accurate copy of the Weekly Schedule for the selected week ending February 9, 2010 at Exhibit "D"). Next, Plaintiffs' counsel would attempt to establish when the Plaintiff boarded the sanitation truck in the morning, using prior testimony, and proceeded to use this as a "start time" for his calculations. (See Exhibit C, 82:17 to 83:17). The daily schedules for that week were then reviewed to determine what driver(s) the subject Plaintiff worked with on which dates. (See

Exhibit C, 83:20 to 84:1; see also a true and accurate copy of the Daily Schedules for the week ending February 9, 2010 at Exhibit "E").

After the driver(s) was identified, the time card for the respective driver for each day of the week ending February 9, 2010 was reviewed to determine when the subject driver "clocked out" each day. (See Exhibit C, 84:12 to 87:19; see also a true and accurate copy of the drivers' time cards for the week ending February 9, 2010 at Exhibit "F"). Plaintiff's counsel used this time to calculate an estimated time when the subject Plaintiff may have been dropped off that same day. (See Exhibit C, 84:12 to 87:19).

## ANALYSIS

### The Court Should Deny Plaintiffs' Motion for Sanctions as they have Failed to Demonstrate that Defendants Intentionally Withheld any Requested Documents

Plaintiffs have failed to meet their burden to demonstrate that Defendants intentionally withheld relevant documents or acted in bad faith. They have failed to demonstrate that the GPS records would be able to provide a "more accurate" records of Plaintiffs' hours that would be beneficial to their clients. As such, their instant motion should be dismissed.

In Bull v. UPS, 665 F.3d 68 (3d Cir. N.J. 2012), the Third Circuit reversed the District Court's ruling issuing sanctions against the plaintiff for spoliation of evidence, finding that the Court had been misled by misrepresentations made by opposing counsel and there was no evidence of intentional withholding of evidence by the plaintiff. 665 F.3d at 77-79. By way of background, the plaintiff in that matter brought an employment discrimination claim against her former employer as a result of their alleged treatment of her after she was injured while working. Id. at 68-71. Prior to litigation, the plaintiff had provided to her employer a copy of a doctor's note regarding an evaluation of her physical capabilities. Ibid. At trial, the plaintiff's counsel advised the court the they no longer had the original. Id. at 71. The defense counsel stated that

they had "documented letters asking for the originals..." Ibid. After their objections were dismissed, the plaintiff advised the Court that she did have possession of the original note. Ibid. The District Court ruled her failure to produce the same was spoliation and ordered the case be dismissed with prejudice as a sanction. Id. at 71.

The Third Circuit Court found that in order to conclude that "sanctionable spoliation occurred," they had to first find that the plaintiff intended to actually withhold the subject document from the defendant, which they could not. Id. at 79. They found that the District Court's ruling that the plaintiff had acted intentionally was not grounded in the record, but was largely based on misrepresentations by opposing counsel. Id. at 80; 83. Specifically, the Court found that the District Court Judge had relied on the misrepresentations by opposing counsel that they had specifically sought the subject document on numerous occasions, an assertion that was not supported by the record. Id. at 74. Despite the lack of specific requests in the record, the District Court had inferred that the Plaintiff, as a result of certain arguments previously made by opposing counsel, should have known exactly what they sought. Id. at 76. The Third Circuit disagreed and argued, "[i]t is largely counsel's role to assess which evidence best serves the case." Ibid. Furthermore, they found it was up to opposing counsel to press for those documents which they determine they need. Ibid. The portrayal of the plaintiff as an "obstinate stonewaller" was unsubstantiated. Id. at 76.

Under Bull, the key issue was whether the discrepancy between the plaintiff's statements was an intentional misrepresentation or simply inadvertence. Id. at 76-77. The burden to prove bad faith conduct is on the opposing party. Id. at 77. In that matter the Court found that there was no evidence that the plaintiff knew that the defendant wanted the original, as she had already

produced copies.  Ibid.  The Court concluded that the District Court abused its discretion in finding that the plaintiff acted in "bad faith."  Ibid.

In the instant matter, unlike the plaintiff in Bull, in this matter, Defendants did not have possession of the subject document since the inception of the matter.  As mentioned above, this system was not installed until February 28, 2012.  However, similar to the plaintiff in Bull, there is no evidence that opposing counsel specifically requested the now sought after documents, namely potential records from the GPS system, prior to Mr. Colasurdo's most recent deposition. Much of discovery was completed prior to the installation of the system, as detailed above, including Plaintiffs propounding their First and Supplemental Request for Production and Interrogatories.  In none of these do Plaintiffs' attorneys make any inquiries as to a possible GPS system or its records.  Additionally, during Mr. Colasurdo's initial deposition, Plaintiffs' counsel also failed to make any such inquiries; but rather focused on the documents Defendants did turn over at their request, namely years of daily and weekly schedules and time cards dating back to 2008.  (See a true and accurate copy of the transcript of the November 9, 2012 deposition of Anthony Colasurdo at Exhibit "G").

The failure of any and all of Plaintiffs' attorneys to make any such request since the inception of this case is most likely evidence that it never occurred to any of them to inquire if there had been any GPS system installed on these commercial vehicles or what possible information the records from such a system could yield.  These same attorneys should not now be allowed to accuse Mr. Colasurdo of not coming up with this additional idea for potentially calculating hours for them sooner.  As the Third Circuit stated in Bull that is the responsibility of counsel to determine what they may need for their case and specifically request the same.

8

Plaintiffs' continually assert that Mr. Colasurdo testified that the GPS system "records are the most accurate" in his possession regarding hours worked by Plaintiffs; however, the Court and parties will have to wait for the transcript to examine exactly what was said and how it occurred.  Regardless, even though Mr. Colasurdo is the sole owner of South Jersey Sanitation, he is not a an attorney.  Any statement he may have made should viewed as an idea he had then, in an attempt to be helpful, and should be given according weight.  Like the plaintiff in Bull, the is no evidence that Mr. Colasurdo should have known Plaintiffs' counsel specifically sought such records as: 1.) the system was no even installed until February 28, 2012; 2.) the system was installed on his vehicles for insurance purposes and not to somehow track the hours of the throwers; and Mr. Colasrudo already was deposed during which the documents Plaintiffs' counsel thought were relevant at the time, namely the daily and weekly schedules and times cards, which he was planning and preparing to produce.

When one actually logically looks at what information this new system could provide, one can discern that it is not provide the "most accurate" with regard to Plaintiffs' alleged hours of work.  As discussed above the system was not even installed until February 28, 2012.  Therefore, if it did became an issue, the system, if even possible, could only provide records regarding certain vehicles movement for the last year.  Moreover, it cannot tell what individuals are on the vehicles at any point or what those on the vehicle are doing.

That said, using any potential records from the GPS System would take the same process, as well additional steps, to arrive at essentially the same calculations.  Presumably, the system can monitor an individual vehicle by marking its location at various intervals.  In order to use any records from this system, counsel would have to complete the same initial steps as outlined above.  However, rather than looking to the daily schedule for the identification of the driver of

9

the truck and then going to the respective time cards, counsel would look to the daily schedule for the identification of the truck number, and then find the GPS report for that day. However, with this system, additional steps would be needed such as finding the exact location where Plaintiff would have been picked up and dropped off, possibly throughout the day, and what route(s) that truck serviced that day. Basically, using any potential records from this system would have taken the same amount of time, if not much more, and would not have been applicable to any Plaintiffs prior to February 28, 2012. Also, the same assumptions made by Plaintiffs' counsel at Mr. Morales' previous deposition would have to be made using these GPS records. Moreover, using this system would result in the needless production of thousands of additional documents, which would place an unnecessary, undue burden on Defendants.

Defendants have provided amble relevant discovery pertaining to the potential calculations of Plaintiffs' hours. There is no evidence to support Plaintiffs' counsel's allegation that Defendants or Defense counsel acted in bad faith or intentionally withheld documents. This claim is unfounded and absurd. All of the above could have been discussed prior to motion practice. A telephone conference with the Court may have save both parties the time and resources this has taken; however, instead Plaintiffs' counsel has unnecessarily engaged in costly and time consuming motion practice. As such, Defendants request that this Court not only deny Plaintiffs' motion; but grant Defendants reasonable attorneys' costs and fees for having to respond to the same.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny Plaintiffs' motion for a sanctions and/or the production of documents related to Defendants' GPS system, and grant Defendants' reasonable attorneys' fees and costs for responding to the same.

Respectfully submitted,
COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM, P.A.

By:/s/Alyson M. Tomljenovic
Alyson M. Tomljenovic
Attorney for Defendants, South Jersey Sanitation
Company, Inc. and Anthony Colarsurdo

DATED:  March 4, 2013

CLAC 2040337.1

11

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAVIER ALAVEZ-LOPEZ, ANTONIO HERNANDEZ, WILLIAM TOVILLA, ALEJANDRO CONSTANTINO, ANTONIO GUTIERREZ, MARCO ANTONIO ORTEGA, on behalf of themselves and those similarly situated.<br><br>PLAINTIFFS<br><br>v.<br><br>SOUTH JERSEY SANITATION CO., INC. and ANTHONY COLARSURDO<br><br>DEFENDANTS | CIVIL ACTION<br><br>No. 10-05647 |

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION DIRECTED TO DEFENDANT SOUTH JERSEY SANITATION COMPANY, INC.

Plaintiffs, by and through their undersigned counsel, hereby demand that Defendant South Jersey Sanitation Company, Inc. (hereinafter "Defendant") respond to the following request for production within thirty (30) days as ordered by the Court during the May 6, 2011 Rule 16 conference held in this action.

SWARTZ SWIDLER, LLC

By: _s/ Joshua S. Boyette_
JOSHUA S. BOYETTE

Date: May 12, 2011

## INSTRUCTIONS

In responding to these Interrogatories, the following instructions shall apply:

1.      Each Interrogatory must be answered separately, fully, in writing, and under oath.

2.      These Interrogatories are deemed to be continuing, requiring Defendant to provide verified supplemental answers setting forth any additional information within the scope of these interrogatories as may be acquired by Defendant, its agents and attorneys.  Such supplemental responses shall be served upon the undersigned counsel for Plaintiff within thirty (30) days after receipt of such information, but in no event later than the discovery cut-off date.

3.      In lieu of identifying particular documents or communications, such documents or communications may, at your option, be attached to your answer to those Interrogatories requesting identification of those documents or communications.

4.      A response should be made individually to each Interrogatory.

5.      The full text of the Interrogatory to which the answer is intended to respond is to be restated immediately preceding such answer.

6.      Use of the singular tense shall be deemed to include the plural and vice versa, and use of the masculine pronoun shall be deemed to include both genders.

7.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any information which might otherwise be construed to be outside their scope.

8.      If any Interrogatory is not fully answered because of a claim of privilege, state the privilege asserted and the facts allegedly giving rise to the claim of privilege.

9.     If Defendant cannot answer any of these Interrogatories after conducting a reasonable investigation, Defendant should so state and answer to the extent it can, stating what information Defendant cannot provide and stating what efforts Defendant made to obtain the unknown information.

## DEFINITIONS

The following definitions shall apply to these Requests for Information:

A.     **"Defendant," "you,"** or **"your"** shall mean the defendant entity(ies) named in the caption of this action, and its predecessors, successors, and assigns, and its/their parent organizations, subsidiaries, and affiliates, and its/their servants, agents, employees, representatives, divisions, managers, accountants, and attorneys, and anyone else acting on its/their behalf, as well as any individuals named as a defendant in the caption of this action.

B.     **"Communicate(d)"** or **"Communication"** means any act or instance of transferring, transmitting, passing, delivering or giving information, in the form of facts, ideas, inquiries, or otherwise, by oral, written, electronic, or any other means.

C.     **"Concerning"** means relating to, referring to, reflecting, describing, evidencing, or constituting.

D.     **"Document(s)"** shall include writings of any type, all other data compilations from which information can be obtained, and any other means of preserving thoughts or expression, however produced or reproduced.  Designated documents shall mean originals in each instance (or copies thereof if originals are unavailable), regardless of origin or location, which are in the custody or control of the Defendant, or in the custody or control of Defendant's agents, representatives, employees, or counsel, and any copies or reproductions that differ in any respect from the original, such as copies containing marginal notations or other variations.

Designated documents are to be taken as including all attachments, exhibits, enclosures, appendices, and other documents that relate to or refer to such designated documents. The enumeration of various specific items as included within the definition of the word "document" shall not be taken to limit the generality of this word, and the requests herein are directed and intended to obtain all "documents" in the broadest and most comprehensive sense and meaning of this word.

E.   **"Identify"** shall mean:

    a.   when referring to a natural person, to give:

        i.   the person's name;

        ii.   the present or last known home address;

        iii.   the present or last known home telephone number;

        iv.   the present or last known place of employment or job title;

        v.   the present or last known business address; and

        vi.   the present or last known business telephone number.

    b.   when referring to any person other than a natural person, to give:

        i.   the full name;

        ii.   the present or last known address; and

        iii.   the principal place of business of the corporation, partnership, proprietorship, association, or other organization being identified.

    c.   when referring to documents, to give:

        i.   the type of document;

        ii.   the general subject matter;

        iii.   the date of the document; and

        iv.   the author(s), addressee(s) and recipient(s).

G.     **"Person"** or **"persons"** shall mean individuals, corporations, proprietorships, partnerships, firms, associations, joint ventures, banks, any government or governmental bodies, commissions, boards or agencies, all other legal entities, and if appropriate or indicated, divisions, subsidiaries or departments of corporations, or other entities, and their principals, agents, representatives, officers, or employees.

H.     **"Plaintiff" or "Plaintiffs"** shall mean the plaintiff(s) named in the caption of this action.

## DOCUMENT REQUESTS

1.      Produce all payroll records for each and every individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action, for the period of December 1, 2007 through the present.

2.      Produce all documents that set forth the amount of wages paid by Defendant to each and every individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action, for the period of December 1, 2007 through the present.

3.      Produce all documents that describe the basis on which Defendant compensated each and every individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action, for the period of December 1, 2007 through the present.

4.      Produce all documents that describe the method or system used by Defendant to track the number of hours that each and every individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action has worked for Defendant, for the period of December 1, 2007 through the present.

5.      Produce all documents that set forth the number of hours that each and every individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action has worked for Defendant, for the period of December 1, 2007 through the present.

6.      Produce all documents that set forth the number of hours worked in each workweek by each individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action, for the period of December 1, 2007 through the present.

7.      Produce all work schedules for each and every individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action, for the period of December 1, 2007 through the present.

8.      Produce job descriptions for each and every individual identified in Defendant's

responses to Plaintiffs' First Set of Interrogatories in this action, for the period of December 1, 2007 through the present.

9.       Produce the personnel files for each and every individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action.

10.      Produce all documents that set forth the name and contact information (or last known contact information) for each and every individual identified in Defendant's responses to Plaintiffs' First Set of Interrogatories in this action.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAVIER ALAVEZ-LOPEZ, ANTONIO HERNANDEZ, WILLIAM TOVILLA, ALEJANDRO CONSTANTINO, ANTONIO GUTIERREZ, MARCO ANTONIO ORTEGA, on behalf of themselves and those similarly situated. | CIVIL ACTION<br><br>No. 10-05647 |
| Plaintiffs, | |
| v. | |
| SOUTH JERSEY SANITATION COMPANY, INC. *et al.* | |
| Defendants. | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT SOUTH JERSEY SANITATION COMPANY, INC.

Plaintiffs, by and through their undersigned counsel, hereby demand that Defendant South Jersey Sanitation Company, Inc. (hereinafter "Defendant") respond to the following interrogatories within thirty (30) days as ordered by the Court during the May 6, 2011 Rule 16 conference held in this action.

SWARTZ SWIDLER, LLC

By: *s/ Joshua S. Boyette*
JOSHUA S. BOYETTE

Date:   May 12, 2011

## **INSTRUCTIONS**

In responding to these Interrogatories, the following instructions shall apply:

1.      Each Interrogatory must be answered separately, fully, in writing, and under oath.

2.      These Interrogatories are deemed to be continuing, requiring Defendant to provide verified supplemental answers setting forth any additional information within the scope of these interrogatories as may be acquired by Defendant, its agents and attorneys.   Such supplemental responses shall be served upon the undersigned counsel for Plaintiff within thirty (30) days after receipt of such information, but in no event later than the discovery cut-off date.

3.      In lieu of identifying particular documents or communications, such documents or communications may, at your option, be attached to your answer to those Interrogatories requesting identification of those documents or communications.

4.      A response should be made individually to each Interrogatory.

5.      The full text of the Interrogatory to which the answer is intended to respond is to be restated immediately preceding such answer.

6.      Use of the singular tense shall be deemed to include the plural and vice versa, and use of the masculine pronoun shall be deemed to include both genders.

7.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any information which might otherwise be construed to be outside their scope.

8.      If any Interrogatory is not fully answered because of a claim of privilege, state the privilege asserted and the facts allegedly giving rise to the claim of privilege.

9.     If Defendant cannot answer any of these Interrogatories after conducting a reasonable investigation, Defendant should so state and answer to the extent it can, stating what information Defendant cannot provide and stating what efforts Defendant made to obtain the unknown information.

## DEFINITIONS

The following definitions shall apply to these Requests for Information:

A.     **"Defendant," "you,"** or **"your"** shall mean the defendant entity(ies) named in the caption of this action, and its predecessors, successors, and assigns, and its/their parent organizations, subsidiaries, and affiliates, and its/their servants, agents, employees, representatives, divisions, managers, accountants, and attorneys, and anyone else acting on its/their behalf, as well as any individuals named as a defendant in the caption of this action.

B.     **"Communicate(d)"** or **"Communication"** means any act or instance of transferring, transmitting, passing, delivering or giving information, in the form of facts, ideas, inquiries, or otherwise, by oral, written, electronic, or any other means.

C.     **"Concerning"** means relating to, referring to, reflecting, describing, evidencing, or constituting.

D.     **"Document"** shall include writings of any type, all other data compilations from which information can be obtained, and any other means of preserving thoughts or expression, however produced or reproduced.  Designated documents shall mean originals in each instance (or copies thereof if originals are unavailable), regardless of origin or location, which are in the custody or control of the Defendant, or in the custody or control of Defendant's agents, representatives, employees, or counsel, and any copies or reproductions that differ in any respect from the original, such as copies containing marginal notations or other variations.  Designated

documents are to be taken as including all attachments, exhibits, enclosures, appendices, and other documents that relate to or refer to such designated documents. The enumeration of various specific items as included within the definition of the word "document" shall not be taken to limit the generality of this word, and the requests herein are directed and intended to obtain all "documents" in the broadest and most comprehensive sense and meaning of this word.

E.   **"Identify"** shall mean:

    a.   when referring to a natural person, to give:

        i.   the person's name;

        ii.   the present or last known home address;

        iii.   the present or last known home telephone number;

        iv.   the present or last known place of employment or job title;

        v.   the present or last known business address; and

        vi.   the present or last known business telephone number.

    b.   when referring to any person other than a natural person, to give:

        i.   the full name;

        ii.   the present or last known address; and

        iii.   the principal place of business of the corporation, partnership, proprietorship, association, or other organization being identified.

    c.   when referring to documents, to give:

        i.   the type of document;

        ii.   the general subject matter;

        iii.   the date of the document; and

        iv.   the author(s), addressee(s) and recipient(s).

G.   **"Person"** or **"persons"** shall mean individuals, corporations, proprietorships, partnerships, firms, associations, joint ventures, banks, any government or governmental bodies,

commissions, boards or agencies, all other legal entities, and if appropriate or indicated, divisions, subsidiaries or departments of corporations, or other entities, and their principals, agents, representatives, officers, or employees.

      H.     **"Plaintiff" or "Plaintiffs"** shall mean the individual(s) named in the caption of this action as a plaintiff.

## INTERROGATORIES

1.      For each and every individual who has, at any time between December 1, 2007

and the present, performed any type of trash collecting/hauling services for Defendant, within the

state of New Jersey:

        a.      Identify the individual's name, address, home phone number, and cellular phone number (or, if the individual has ceased performing services for Defendant, the individual's last known address, home phone number, and cellular phone number);

        b.      Set forth the individual's hire date(s) and, if applicable, termination date(s);

        c.      Identify the job title and describe the duties the individual performs (or performed) for Defendant (and if either changed at any point during the relevant time period, set forth when and how it changed);

        d.      Describe the basis on which Defendant compensates (or compensated) the individual (if on an hourly basis, set forth the hourly rate; if on a daily basis, set forth the daily rate; if on a weekly basis, set forth the weekly rate), and if the basis changed at any time during the relevant time period, set forth when and how it changed;

        e.      Describe the method or system Defendant uses (or used) to track the number of hours the individual has worked for Defendant during each and every workweek that the individual has performed any service on behalf of Defendant, or admit that no such method or system was implemented by Defendant;

        f.      Set forth the number of hours that Defendant believes the individual has worked for Defendant in each and every workweek that the individual has performed any service on behalf of Defendant, and explain the basis for this belief; and

        g.      Set forth whether Defendant considered the individual to be an employee of Defendant, and if not, set forth in detail why.

2.      For each and every individual who has, at any time between December 1, 2007 and the present, performed any type of trash collecting/hauling services for Defendant, outside the state of New Jersey:

     a.    Identify the individual's name, address, home phone number, and cellular phone number (or, if the individual has ceased performing services for Defendant, the individual's last known address, home phone number, and cellular phone number);

     b.    Set forth the individual's hire date(s) and, if applicable, termination date(s);

     c.    Identify the job title and describe the duties the individual performs (or performed) for Defendant (and if either changed at any point during the relevant time period, set forth when and how it changed);

     d.    Describe the basis on which Defendant compensates (or compensated) the individual (if on an hourly basis, set forth the hourly rate; if on a daily basis, set forth the daily rate; if on a weekly basis, set forth the weekly rate), and if the basis changed at any time during the relevant time period, set forth when and how it changed;

     e.    Describe the method or system Defendant uses (or used) to track the number of hours the individual has worked for Defendant during each and every workweek that the individual has performed any service on behalf of Defendant, or admit that no such method or system was implemented by Defendant; and

     f.    Set forth the number of hours that Defendant believes the individual has worked for Defendant in each and every workweek that the individual has performed any service on behalf of Defendant, and explain the basis for this belief; and

     g.    Set forth whether Defendant considered the individual to be an employee of Defendant, and if not, set forth in detail why.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAVIER ALAVEZ-LOPEZ, ANTONIO HERNANDEZ, WILLIAM TOVILLA, ALEJANDRO CONSTANTINO, ANTONIO GUTIERREZ, MARCO ANTONIO ORTEGA, on behalf of themselves and those similarly situated.<br><br>    PLAINTIFFS<br><br>    v.<br><br>SOUTH JERSEY SANITATION CO., INC. and ANTHONY COLARSURDO<br><br>    DEFENDANTS | CIVIL ACTION<br><br>No. 10-05647 |

**PLAINTIFFS' SUPPLEMENTAL REQUESTS FOR PRODUCTION DIRECTED TO DEFENDANT SOUTH JERSEY SANITATION COMPANY, INC.**

Plaintiffs, by and through undersigned counsel, hereby demand that Defendant South Jersey Sanitation Company, Inc. (hereinafter "Defendant") respond to the following request for production within the time period proscribed by the Rules of Court.

SWARTZ SWIDLER, LLC

By:  _s/ Richard S. Swartz_
     RICHARD S. SWARTZ, ESQ.

Date:   January 12, 2012

## INSTRUCTIONS

In responding to these Interrogatories, the following instructions shall apply:

1.      Each Interrogatory must be answered separately, fully, in writing, and under oath.

2.      These Interrogatories are deemed to be continuing, requiring Defendant to provide verified supplemental answers setting forth any additional information within the scope of these interrogatories as may be acquired by Defendant, its agents and attorneys.   Such supplemental responses shall be served upon the undersigned counsel for Plaintiff within thirty (30) days after receipt of such information, but in no event later than the discovery cut-off date.

3.      In lieu of identifying particular documents or communications, such documents or communications may, at your option, be attached to your answer to those Interrogatories requesting identification of those documents or communications.

4.      A response should be made individually to each Interrogatory.

5.      The full text of the Interrogatory to which the answer is intended to respond is to be restated immediately preceding such answer.

6.      Use of the singular tense shall be deemed to include the plural and vice versa, and use of the masculine pronoun shall be deemed to include both genders.

7.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any information which might otherwise be construed to be outside their scope.

8.      If any Interrogatory is not fully answered because of a claim of privilege, state the privilege asserted and the facts allegedly giving rise to the claim of privilege.

9.    If Defendant cannot answer any of these Interrogatories after conducting a reasonable investigation, Defendant should so state and answer to the extent it can, stating what information Defendant cannot provide and stating what efforts Defendant made to obtain the unknown information.

## DEFINITIONS

The following definitions shall apply to these Requests for Information:

A.    **"Defendant," "you,"** or **"your"** shall mean the defendant entity(ies) named in the caption of this action, and its predecessors, successors, and assigns, and its/their parent organizations, subsidiaries, and affiliates, and its/their servants, agents, employees, representatives, divisions, managers, accountants, and attorneys, and anyone else acting on its/their behalf, as well as any individuals named as a defendant in the caption of this action.

B.    **"Communicate(d)"** or **"Communication"** means any act or instance of transferring, transmitting, passing, delivering or giving information, in the form of facts, ideas, inquiries, or otherwise, by oral, written, electronic, or any other means.

C.    **"Concerning"** means relating to, referring to, reflecting, describing, evidencing, or constituting.

D.    **"Document(s)"** shall include writings of any type, all other data compilations from which information can be obtained, and any other means of preserving thoughts or expression, however produced or reproduced.  Designated documents shall mean originals in each instance (or copies thereof if originals are unavailable), regardless of origin or location, which are in the custody or control of the Defendant, or in the custody or control of Defendant's agents, representatives, employees, or counsel, and any copies or reproductions that differ in any respect from the original, such as copies containing marginal notations or other variations.

Designated documents are to be taken as including all attachments, exhibits, enclosures, appendices, and other documents that relate to or refer to such designated documents. The enumeration of various specific items as included within the definition of the word "document" shall not be taken to limit the generality of this word, and the requests herein are directed and intended to obtain all "documents" in the broadest and most comprehensive sense and meaning of this word.

E. **"Identify"** shall mean:

    a. when referring to a natural person, to give:

        i. the person's name;

        ii. the present or last known home address;

        iii. the present or last known home telephone number;

        iv. the present or last known place of employment or job title;

        v. the present or last known business address; and

        vi. the present or last known business telephone number.

    b. when referring to any person other than a natural person, to give:

        i. the full name;

        ii. the present or last known address; and

        iii. the principal place of business of the corporation, partnership, proprietorship, association, or other organization being identified.

    c. when referring to documents, to give:

        i. the type of document;

        ii. the general subject matter;

        iii. the date of the document; and

        iv. the author(s), addressee(s) and recipient(s).

G.   **"Person"** or **"persons"** shall mean individuals, corporations, proprietorships, partnerships, firms, associations, joint ventures, banks, any government or governmental bodies, commissions, boards or agencies, all other legal entities, and if appropriate or indicated, divisions, subsidiaries or departments of corporations, or other entities, and their principals, agents, representatives, officers, or employees.

H.   **"Plaintiff"** or **"Plaintiffs"** shall mean the plaintiff(s) named in the caption of this action.

## REQUESTS

1. Any and all manuals, documents (written, electronic, or otherwise), handwritten notes, spreadsheets, and/or other memoranda referring, relating, and or regarding the method or system used by Defendant to calculate payroll.

2. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the daily rate Defendant compensated each Plaintiff for the worked performed by the Plaintiff. If said daily rate changed during said time period, please produce documents setting forth the date(s) on which the daily rate changed as well as amount to which the daily rate changed.

3. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the number of days per week that each Plaintiff worked for Defendant.

4. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the scheduled start time for each Plaintiff.

5. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the scheduled end time for each Plaintiff.

6. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth each and every day each Plaintiff was absent from work.

7. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth each and every day that each Plaintiff was late to work.

8. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth each and every day that each Plaintiff left work early.

9. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the number of hours that each Plaintiff worked for Defendant per week, during the weeks in which the Plaintiff worked 5 days for Defendant.

10. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please

produce documents setting forth the hours that each Plaintiff worked for Defendant per week, during the weeks in which the Plaintiff worked 6 days for Defendant.

11. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the hours that each Plaintiff worked for Defendant per week, during the weeks in which the Plaintiff worked 7 days for Defendant.

12. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the hours that each Plaintiff worked for Defendant on the days on which each Plaintiff worked for Defendant.

13. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the basis on which Defendant paid each Plaintiff (daily, hourly, or other basis).

14. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the routes taken by each truck on which each Plaintiff rode while working for Defendant.

15. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the name and last known address and phone number of each driver who drove the trucks on which each Plaintiff rode while working for Defendant.

16. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents setting forth the contact information of the municipalities, towns, and cities for which Plaintiff collected trash while working for Defendant, so that said municipalities, towns, and cities may be served with a subpoena to testify at a deposition and/or at trial as to, among other relevant things, the hours (start and end times) and days of the week in which trash, brush, and/or recycling was collected, and the streets and addresses from which same was collected.

17. For the duration of each Plaintiff's employment with Defendant (but going back only three years from the date on which each Plaintiff joined the instant action), please produce documents relating or referring to any contracts for the collection of trash, brush, and/or recycling that were entered into or lost by Defendant that in any way added to or subtracted from the work any Plaintiff performed for Defendant.

18. Please produce blueprints, maps, drawings, illustrations, and other documents which illustrate each route assigned to each Plaintiff in which the Plaintiff collected trash, brush,

and/or recyclables for Defendant in the three years prior to the Plaintiff joining the instant action to the present.

19. As to any expert Defendant plans to utilize as a witness at time of trial, please produce a written report prepared and signed by the witness and containing:

      a.    a complete statement of all opinions to be expressed;

      b.    the bases and reasons for all such opinions;

      c.    the data or other information considered by the witness;

      d.    any exhibits to be used as a summary of or support for the opinions;

      e.    the qualifications of the witness;

      f.    a list of all publications authored by the witness within the preceding ten (10) years;

      g.    the compensation to be paid for the study and testimony; and

      h.    a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four (4) years.

20. Please produce any and all letters, memoranda, and other written communications between Defendant (or counsel for Defendant) and any expert witness who will be called at time of trial.

21. Please produce any and all drafts, notes, memoranda, calculations, studies, tests, and other work papers of whatever kind or description generated or utilized by any expert or witness who is expected to be called as a witness at time of trial.

22. A complete and current *curriculum vitae* for any expert Defendant plans to utilize at time of trial.

23. Please produce any and all documents that were referenced in Defendant's Rule 26 initial disclosures in this action.

24. Please produce any and all documents that were referenced in Defendant's answers to Plaintiff's interrogatories, or that were reviewed by Defendant in connection with Defendant answering Plaintiff's interrogatories or supplemental interrogatories.

25. Please produce any and all documents that support or otherwise relate to the denials set forth in Defendant's Answer in this action.

26. Please produce any and all documents that support or otherwise relate to Defendant's Affirmative Defenses in this action.

27. Please produce true and correct copies of each document or other tangible thing Defendant intends to introduce as an exhibit at time of trial.

28. Please produce any and all documents that Defendant believes may be relevant to the instant action but not covered by any of the previous requests.

Exhibit "B"

# EXHIBIT C

-----------------------------------
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
-----------------------------------

- - -

JAVIER ALAVEZ-LOPEZ, ANTONIO  : CIVIL ACTION
HERNANDEZ, WILLIAM TOVILLA,   :
ALEJANDRO CONSTANTINO,        :
ANTONIO GUTIERREZ, MARCO      :
ANTONIO ORTEGA, on behalf of  :
themselves and those          :
similarly situated,           :
                 Plaintiffs,  :
        vs.                   :
                              :
                              :
SOUTH JERSEY SANITATION       :
COMPANY, INC. and ANTHONY     :
COLARSURDO,                   :
                 Defendants.  :  NO. 1:10-CV-05647

- - -

WEDNESDAY, JANUARY 30, 2013

- - -

     INTERPRETED DEPOSITION of EDWIN MORALES, held
in the Law Offices of SWARTZ SWIDLER, LLC, 1878
Marlton Pike, Suite 10, Cherry Hill, New Jersey
08003, at approximately 10:51 a.m., on the above
date, before Kimberly A. Little, a Registered
Professional Reporter, New Jersey Certified
Court Reporter and Notary Public in and for the
Commonwealth of Pennsylvania.

- - -

R&K REPORTING INC.
Court Reporting Services
PO Box 1972
Levittown, Pennsylvania 19058
Phone 215-946-7009    Fax 215-949-1867



```
 1        February 9, 2010, correct?
 2                  MS. TOMLJENOVIC:  Objection to
 3           form.
 4                  THE WITNESS:  Correct.
 5   BY MR. SWIDLER:
 6        Q.    We have one more for this week and
 7   then we'll take a break.
 8                  Okay.  I need you to take a look
 9   at Exhibit Morales-1A.  According to these
10   records, we are going to look at Mr. Tovilla
11   next.  He worked Wednesday, Thursday, Friday,
12   Monday, and Tuesday.  Mr. Tovilla, would you
13   agree with me that the records show that he
14   worked Wednesday, Thursday, Friday, Monday,
15   Tuesday?
16        A.    Yes.  Correct.
17        Q.    Now, according to your testimony, Mr.
18   Tovilla was picked up in Vineland and dropped
19   off in Vineland?
20        A.    Negative.  Negative.
21        Q.    So did he go to the yard or was he
22   picked up in Hammonton?
23        A.    Both ways.
24        Q.    Okay.
```

```
 1        A.     Sometimes he will go to the yard.
 2   Sometimes we will go and pick him up.
 3        Q.     For purposes of this deposition,
 4   let's assume that he got on the garbage truck
 5   from his home at 5:10 every morning.  Okay?
 6   That would be the latest he would get on the
 7   garbage truck, correct?
 8        A.     Correct.
 9             THE INTERPRETER:  Can you repeat
10        the last question?
11   BY MR. SWIDLER:
12        Q.     For purposes of what we are about to
13   do, let's assume that Mr. Tovilla did not go to
14   the yard or enter the garbage truck at 5:10 in
15   the morning each day.  That's the latest he
16   would have gotten on the garbage truck,
17   correct?
18        A.     Correct.
19        Q.     I want you to write the days and put
20   a star times 5:10.  According to South Jersey's
21   records, Mr. Tovilla -- I want you to confirm
22   this again -- worked with Mr. Rodriguez every
23   day that week.  Please confirm that and tell me
24   if you agree.
```

```
 1          A.      Correct.
 2          Q.      So the earliest Mr. Tovilla would
 3      have gotten out of the garbage truck,
 4      understanding that he may have gone to the yard
 5      or may have ended at his house, it would be ten
 6      minutes before Mr. Rodriguez stops working?
 7          A.      Correct.
 8              MS. TOMLJENOVIC:  Objection to
 9          form.
10              THE WITNESS:  Correct.
11      BY MR. SWIDLER:
12          Q.      According to the records of South
13      Jersey Sanitation, Mr. Tovilla would have ended
14      his day 10 minutes before 4:05 p.m., correct?
15              MR. SWIDLER:  I am looking at
16          Monday.  I got confused.
17      BY MR. SWIDLER:
18          Q.      Ten minutes before 2:00 p.m.,
19      correct, 1:50, right?
20          A.      Correct.
21          Q.      On Thursday, he would have ended his
22      day ten minutes before 2:10 p.m., correct?
23              MS. TOMLJENOVIC:  Objection to
24          form.
```

```
 1        BY MR. SWIDLER:
 2             Q.    You said 2:00, correct?
 3                   THE WITNESS:  2:00, because it's
 4            ten minutes before so that would
 5            sound like I said 2:00.
 6        BY MR. SWIDLER:
 7             Q.    On Friday, according to these
 8        records, Mr. Rodriguez finished at 3:07 p.m.,
 9        correct?
10             A.    3:07, correct.
11             Q.    Which means that Mr. Tovilla would
12        have ended his day at 2:57?
13             A.    Correct.
14             Q.    On Monday, Mr. Rodriguez ended his
15        day at 4:05 p.m., correct?
16             A.    Correct.
17             Q.    Which means that Mr. Tovilla ended
18        his day at 3:55 p.m.?
19                   MS. TOMLJENOVIC:  Objection to
20            form.
21                   THE WITNESS:  Correct.
22        BY MR. SWIDLER:
23             Q.    On Tuesday, Mr. Rodriguez ended at
24        2:51 p.m., correct?
```

[Page 86]

```
 1         A.    Correct.

 2         Q.    Which means Mr. Tovilla would have

 3    ended at 2:41 p.m., correct?

 4              MS. TOMLJENOVIC:  Objection to

 5         form.

 6              THE WITNESS:  Correct.

 7    BY MR. SWIDLER:

 8         Q.    Okay.  So based on that, Mr. Tovilla

 9    worked 8 hours and 40 minutes on Wednesday,

10    correct?

11         A.    On Monday?

12         Q.    I'm sorry.  On Wednesday.  I'm sorry.

13    On Wednesday.

14         A.    If that would be the amount of hours,

15    I guess so.  I don't have any calculations.

16         Q.    Okay.  That is fair.  5:10 to

17    1:50 p.m. I will tell you is 8 hours 40

18    minutes.

19         A.    Okay.

20         Q.    On Thursday, we have a time in at

21    5:10 and time out at 2:00, correct?

22         A.    Correct.

23         Q.    I will tell you that is 8 hours and

24    50 minutes?
```

```
 1            A.     Correct.

 2            Q.     Friday we have 5:10 in.  Go back a

 3       second.  We have 5:10 as a time in and 2:00 as

 4       the time out, correct?  That is 8 hours and 50.

 5            A.     Correct.

 6            Q.     On Friday, we have 5:10 to 2:57,

 7       correct?

 8            A.     Correct.

 9            Q.     9 hours and 47 minutes?

10            A.     Correct.

11            Q.     And Monday we have 5:10 to 3:55,

12       correct?

13            A.     Correct.

14            Q.     And that is 10 hours and 45 minutes.

15       Tuesday, 5:10 to 2:41.

16            A.     Correct.

17            Q.     Which gives us 9 hours and 41

18       minutes.

19            A.     Correct.

20            Q.     Okay.  Hang on a second.  I'll

21       represent to you that is 47 hours and 33

22       minutes.

23            A.     Correct.

24            Q.     Mr. Tovilla on the week of
```

```
 1                         -    -    -

 2                C E R T I F I C A T I O N

 3                         -    -    -

 4

 5       I hereby certify that the proceedings and

 6   evidence are contained fully and accurately in

 7   the stenographic notes taken by me upon the

 8   foregoing matter at the time and place stated

 9   herein, and that this is a correct transcript of

10   same.

11

12

13   _____

14   KIMBERLY A. LITTLE, RPR, CCR
     NOTARY PUBLIC

15

16

17

18       (The foregoing certification of

19       this transcript does not apply to any

20       reproduction of the same by any means,

21       unless under the direct control and/or

22       supervision of the certifying

23       shorthand reporter.)

24
```

# EXHIBIT D

**Nav Period Ending**

**DRIVER:**

| Driver Name: | wed | isp | thur | isp | fri | isp | sat | isp | mon | isp | tue | isp | Comment: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Abreu, Julian | X | 12 | V | ✓ | X | ✓ | | | X | | X | | |
| Acosta, Ismael | X | | X | | X | | | | X | | X | | |
| Adorno, Anthony | X | ✓ | X | 20 | | | | | X | ✓ | X | | o – off |
| Aviles, Osvaldo | X | ✓ | X | | X | | | | X | | X | | n/s – no show |
| Berggren, Theodore | X | ✓ | V | ✓ | X | ✓ | | | X | 12 | X | | c/o – call out |
| Betancourt, Alexis | X | ✓ | X | ✓ | X | | | | X | | X | | H – sent home |
| Campfield, John | X | | X | | X | | | | X | | X | | v – vacation |
| Capelas, Miguel | X | ✓ | X | ✓ | X | | | | X | ✓ | X | | su – suspended |
| Cartagena, Jose | X | 10 | X | ✓ | X | ✓ | | | X | | X | | F – fired |
| Colon, Eusebio C. | V | | X | 12 | c | | | | X | 12 | X | | x – working |
| Contreras, Roberto | X | | X | ✓ | X | | | | X | | X | | jj – jury duty |
| Cotto, Jeraldo | X | ✓ | V | 12 | X | ✓ | | | X | ✓ | X | | Q – quit |
| Cruz, Jorge Sr. | c | | X | ✓ | X | | | | X | | c | | s – sick |
| Diaz, Santos | X | ✓ | X | ✓ | X | | | | X | ✓ | X | | N/D – no drive |
| Duprey, Heriberto | X | 12 | X | 12 | V | | | | V | 12 | X | | D – desablity |
| Florez, Omar | X | ✓ | X | ✓ | X | | | | X | | X | | |
| Gonzalez, Yoni | X | | X | | X | 12 | | | X | | V | | |
| Herndez Miguel, Jesus | X | ✓ | V | | X | ✓ | | | X | 12 | X | | |
| Jusino, Jose | X | ✓ | X | ✓ | X | | | | X | ✓ | X | | |
| Morales, Edwin | X | | X | | X | | | | X | | X | | |
| Morales, Herminio | X | | X | | X | | | | X | | X | | |
| Oncay, Glenn | X | | X | 12 | X | | | | X | 12 | X | | |
| Otero, Carlos | X | ✓ | X | ✓ | X | | | | X | ✓ | X | | |
| Ramos, Gregoire L. | X | | X | | X | | | | X | ✓ | V | | |
| Rodriguez, Rafael | X | ✓ | X | ✓ | X | | | | X | | V | | |
| Santiago, Juan | X | | X | | X | | | | X | | X | | |
| Serrano, Rogelio | X | ✓ | X | ✓ | V | | | | X | | X | | |
| Serrano, Rogelio Jr. | X | ✓ | X | | X | | | | X | | X | | |
| Villamonte, Carlo | X | ✓ | X | ✓ | X | | | | X | ✓ | X | | |
| | | | | | | | | | | | | | |
| SUB-TOTAL | 25 | | 27 | | 27 | | | | 26 | | 26 | | |
| 2C IN NEED | | | | | | | | | | | | | |
| SHOP | | | | | | | | | | | | | |
| EXTRAS | | | | | | | | | | | | | |
| OUT | | | | | 2 | | | | | | | | |
| TOTAL | | | | | | | | | | | | | |

(Sun)

| | wed | isp | thur | isp | fri | isp | sat | isp | mon | isp | tue | isp | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Diaz, Luis (welder) | X | | X | | X | | | | NS | | | | |
| Morales, Ediniel (mec) | V | | X | | O | | X | | X | | | | |
| Morales, Marcos (weld) | X | | X | | X | | | | X | | X | | |
| Morales, Miguel (tire) | V | | V | | V | | | | V | | V | | |
| Ortega, Samuel (weld) | NS | | O | | NS | | | | V | | | | |
| Rodriguez, Danny (mec) | X | | X | | X | | X | | X | | | | |

EXHIBIT Morales 1 1/30/13 KA

Pay Period Ending __9/9/10__

| Helper's Name | Wed | Thurs | Fri | Sat | Mon | Tues | Comments: | |
|---|---|---|---|---|---|---|---|---|
| Acevedo, Rey | NS | NS | NS | | NS | NS | | H- Home |
| Alarcon, Mariano | X | X | H | | X | X | | Q - Quit |
| Alvarez, Eloy | X | X | X | | X | X | | F - Fired |
| Alavez, Javier | X | X | X | | X | X | | O - Off |
| Aquino, Cecilio | X | X | X | | X | X | | N - No Show |
| Aquino, Felix | X | X | X | | X | X | | C - Call Out |
| Armendaris, Alfredo | H | H | O | | NS | NS | | S - Out Sick |
| Bercena, Isidro | NS | NS | O | | NS | NS | | X - Working |
| Berggren, Sean | X | X | C | | X | X | | |
| Castaneda, Armando | X | X | X | | X | X | | |
| Constantino, Alejandro | X | X | X | | X | V | | |
| Cortez, Lazaro | X | X | X | | X | X | | |
| Diaz, Fortino | X | X | X | | X | X | | |
| Ebinger, Brian | X | X | O | | X | X | | |
| Estrella, Erasto | X | X | X | | X | X | | |
| Gomez, Carlos | X | X | X | | X | X | | |
| Gomez, Esguin R. | X | X | X | | X | X | | |
| Gonzalez, Tony | X | X | X | | X | X | | |
| Gutierrez, Antonio | X | X | X | | X | X | | |
| Guzman, Max | X | NS | X | | NS | X | | |
| Hernandez, Roberto | X | X | X | | X | X | | |
| Hernandez, Antonio | X | X | X | 600 | X | X | Plus 9500 (F time Haz) | |
| Hernandez, Jogie J. | X | X | X | | X | X | | |
| Hernandez, Yimi | X | X | X | | X | X | | |
| Jimenez, Zosimo | X | X | X | | X | X | | |
| Killian, Christopher | X | X | X | | X | X | | |
| Lopez, Jorge | X | X | X | | X | X | | |
| Lopez, Pedro | X | X | X | | X | X | | |
| Martinez, Camerino | X | X | X | | X | X | | |
| Martinez, Ferdinand | X | X | O | | X | X | | |
| Martinez, Luis | X | X | O | | X | X | | |
| Mendez, Filiberto | X | H | X | | X | X | | |
| Ortiz, Carlos | NS | X | X | | X | X | | |
| Perez, Orlando | X | X | O | | X | X | | |
| Piñero, Jose | X | X | X | | X | X | | |
| Ramos, Alexander | X | O | X | | NS | X | | |
| Ramos, Ismael | X | O | O | | X | X | | |
| Rodriguez, Bernaldino | X | X | O | | C | C | | |
| Sanchez, Luis | X | X | X | | C | S | | |
| Santana, Abner | X | X | O | | X | G | | |
| Santana, Juan M. | X | X | X | | X | X | | |
| Singuenza, Carlos | X | X | H | | X | X | | |
| Sotelo, Jose | X | NS | X | | NS | NS | | |
| Teran, Julio | X | X | X | | X | X | | |
| Torres, Rene | X | X | X | | X | X | | |
| Tovilla, William | X | X | X | | X | X | | |
| Weems, Leonard | X | X | O | | X | X | | |
| Urvina, Luis | X | X | X | | X | X | | |
| Pedro Barroso | | | | | X | NS | | |
| A Lopez to confoas | | | | | | X | | |

(2R W)

# EXHIBIT E

FEBRUARY 03, 2010

WEDNESDAY'S SCHEDULE

SHOP—      MIGUEL     MARCOS        DANNY     JAVY     HERMINIO

WATERFORD—JUAN SANTIAGO #46
     ⟨✓⟩  JOSE HERNANDEZ ✓
          ROBERTO HERNANDEZ ✓
          Came back with trash
WATERFORD—JAVIER MORALES #45
  (VINELAND)  CAMERON MARTINEZ ✓
  NO Dump  Came back
                    with they—

SOMERDALE—OMAR FLORES  #37
     ②   LUIS MARTINEZ ✓
          FORTINO DIAZ ✓

SOMERDALE—CARLOS OTERO  #33
     ②   ANTONIO HERNANDEZ ✓
          MARO GUZMAN ✓

MILLVILLE—RTO CONTRERAS #48
  (RCY)    ABNER SANTANA ✓
     ⑥   NEIBER GOMENDEZ ✓
          Vineland Rcy ②

MILLVILLE—CARLOS VILLAMONTE #35
     ②   LAZARO CORTEZ ✓

MILLVILLE—JERALDO COTTO #36
     ②   ISMAEL RAMOS ✓
          KENT TORRES ✓

HADDON TWP—JOSE CARTAGENA #43
  (RCY)  ①  ALEANDRO CONSTANTINO ✓

HADDON TWP—MIKE CAPELAS #55
     ②   MARIANO ABARCON ✓
          BERNARDINO RODZ. ✓

VINELAND—SANTOS DIAZ  #58 ▓▓▓
     ①   LUIS URVINA ✓
          JOSE PINERO ✓
          Came back with trash
VINELAND—OSVALDO AVILES #53 ▓▓▓
     ①   JULIO TERAN ✓
          FERDINAND MARTINEZ ✓

VINELAND—ISMAEL ACOSTA #44
  (RCY)  ⑥  ANTONIO GUTIERREZ ✓

VINELAND—JOSE JUSINO  #28
  (RCY)  ④  ALEXANDER RAMOS ✓

BURLINGTON—ROGER SERRANO #56
     ①   JORGE LOPEZ ✓
          RUBEN AQUINO ✓

BURLINGTON—JOHN CAMPHIELD #29
     ①   OSCAR AQUINO ✓
          PEDRO LOPEZ ✓

TABERNACLE—TED BERGGREN #52
     ①   SHANE BERGGREN ✓
          BRIAN RESINGER ✓

SALEM—JULIAN ABREU #40
     ①   CRISTABIAN ✓

LINDENWOLD—EUSEBIO COLON #30
     ①   CARLOS GOMEZ ✓
          ORLANDO PEREZ ✓
  (DO HADDONT HTS. BUSINES DISTRIC )  ①

HARRISON—LORENZO RAMOS #49
     ②   EUGENIO GOMEZ ✓
          ELOYSANCHEZ ✓

HARRISON—TONY ADORNO  #31
  (RCY)  ①  JAVIER ADAMAZ ✓        ✗
          LEONARDO ABREMS ✓

BEVERLY— ALEXIS BETANCOURT #41
     ②   YOEL HERNANDEZ ✓
          ZOSIMO GIMENEZ ✓

CINNAMINSON—RAFAEL RODRZ.  #51
     ①   WILLIAM TOVIELA ✓
          CARLOS SINGUENZA ✓

CINNAMINSON—HERIBERTO DUPREY #42
     ①   ARMANDO CASTAÑEDA ✓
          ERASTO ESTRELLA ✓

VINELAND—YONI GONZALEZ      #57(YW)
     ①   TONY GONZALEZ ✓
          JOSE SOTELO ✓

VINELAND—JESUS HERNANDEZ #38 (▓▓)
     ①   LUIS SANCHEZ ✓

YARD—JUAN M. SANTANA ✓

FL—GLEN ONCAY      #54 ✓
FL—RJ SERRANO      #32
RL—               #47
RL                #39

WEDNESDAY                              OFF—

NOTES:                        02-03-2010

JUAN SANTIAGO:  TRY TO DUMP ALL LOADS IN CUMBERLAND.

MISSING DRIVERS

1. TAKE RJ FROM #47

STAND BY:

1. FILIBERTO MENDEZ
2. USE NEW HELPER
3. TAKE HELPER FROM MILLVILLE

1. USE NEW HELPER
2. TAKE HELPER FROM MILLVILLE
3. TAKE 4TH HELPER FROM CINNAMINSO.

| | |
|---|---|
| 17—R/L ▒▒ | 41—R/L |
| 18—R/L | 42—R/L |
| 26—RCY ▒▒▒▒ | 43—R/L |
| 27—RCY | 44—RCY |
| 28—RCY | 45—R/L |
| 29—R/L | 46—R/L |
| 30—R/L | 47—R/O |
| 31—R/L | 48—RCY |
| 32—F/L | 49—R/L |
| 33—R/L | 50—R/L |
| 34—R/L | 51—R/L |
| 35—R/L | 52—R/L |
| 36—R/L | 53—R/L |
| 37—R/L | 54—F/L |
| 38—R/L | 55—R/L |
| 39—R/O ▒▒ | 56—R/L |
| 40—R/L | 57—R/L |
| | 58—R/L *vineland* |

FEBRUARY 03, 2010

WEDNESDAY'S SCHEDULE

SHOP---    MIGUEL    MARCOS     DANNY    JAVY    HERMINIO

WATERFORD---JUAN SANTIAGO #46
           JOSE HERNANDEZ
           ROBERTO HERNANDEZ
           *TAVICR MORALS*

WATERFORD---~~CARLOS OTERO~~    #45
(VINELAN)   CAMERINO MARTINEZ

SOMERDALE--- ~~CARLOS VILLAMONTE~~ #37   *Omar Flores*
           MARIANO ALARCON
           FORTINO DIAZ

SOMERDALE--- ~~OMAR FLORES~~   #33   *Carlos Otero*
           ~~ANTONIO HERNANDEZ~~
           ~~Joseph Grossman~~

MILLVILLE---RTO CONTRERAS #48
(RCY)        ~~ABNER SANTANA~~
           ~~CARLOS ORTIZ~~

MILLVILLE---~~JORGEL CRUZ~~ #35   *Carlos Villamonte*
           LAZARO CORTEZ

MILLVILLE---JERALDO COTTO #36
           ~~ISMAEL RAMOS~~
           ~~RENE TORRES~~

HADDON TWP---JOSE CARTAGENA #43
(RCY)        ~~ALEJANDRO CONSTANTINO~~

HADDON TWP---MIKE CAPELAS #55
           ~~LUIS MARTINEZ~~
           ~~BERNARDINO RODZ.~~

VINELAND---SANTOS DIAZ #58
           ~~LUIS URVINA~~
           ~~JOSE PINERO~~

VINELAND---OSVALDO AVILES #53
           ~~JULIO TRICAY~~
           *Fortino Diaz Meabe*

VINELAND---ISMAEL ACOSTA #44
(RCY)        ~~ANTONIO GUTIERREZ~~

VINELAND---JOSE JUSINO #28
(RCY)        ~~ALEXANDER RAMOS~~

BURLINGTON---ROGER SERRANO #56
           ~~JORGE PEREZ~~
           ~~FELIX AQUINO~~

BURLINGTON---JOHN CAMPHIELD #29
           ~~CECILIO AQUINO~~
           ~~PEDRO LOPEZ~~

TABERNACLE---TED BERGGREN #52
           ~~SEAN BERGGREN~~
           BRIAN EBINGER

SALEM---JULIAN ABREU #40
           ~~CRISD KILLIAN~~

LINDENWOLD---EUSEBIO COLON #30
           ~~CARLOS GOMEZ~~
           ORLANDO PEREZ
           (DO HADDON THIS  BUSINES DISTRIC )

HARRISON---LORENZO RAMOS #49
           ~~ESQUINTO GOMEZ~~
           ~~JUO PALAVEZ~~

HARRISON---TONY ADORNO #31
(RCY)        ~~JAVIER TRAVIES~~
           LEONARD WEEMS

BEVERLY--- ALEXIS BETANCOURT #41
           ~~YIMI HERNANDEZ~~
           ~~ZOSIMO JIMENEZ~~

CINNAMINSON---RAFAEL RODRZ.    #51
           ~~WILBERT TOVILLA~~
           CARLOS SINGUENZA

CINNAMINSON---HERIBERTO DUPREY #42
           ~~ARMANDO CASTANEDA~~
           ERASTO ESTRELLA

VINELAND---YONI GONZALEZ     #57(YW)
           ~~TONY GONZALEZ~~
           JOSE SOTELO

VINELAND---JESUS HERNANDEZ #38
           LUIS SANCHEZ

YARD---JUAN M. SANTANA

FL-----GLEN ONCAY         #54
FL-----RJ SERRANO         #32
RL-----                       #47
RL                         #39

(14)

FEBRUARY 05, 2010

FRIDAY'S SCHEDULE

SHOP—MIGUEL MARCOS DANNY LUIS          SAMUEL HERMINIO LORENZO

COLLINGSWOOD——TED BERGGREN #52          LINDENWOLD—CARLOS OTERO #30
(RCV)  ① JOSE SOTELO ✓                  ① CARLOS GOMEZ ✓

COLLINGSWOOD—CARLOS VILLAMONTE #37       CINNAMINSON—RAFAEL RODRIGUEZ #51
        ② ROBERTO HERNANDEZ ✓                   ② ~~~~~~~~LA ✓
           LUIS URODIA ✓                            CARMEN MARTINEZ ✓

BARRINGTON—JULIAN ABREU #40              CINNAMINSON—HERIBERTO DUPREY #42
        ② CRISTEBEAN ✓                           ② ~~~~~~~ CASTANEDA ✓
           TORTINO DIAZ ✓                            ~~~~~~~~~LA ✓

BARRINGTON—JOSE CARTAGENA #41            MILLVILLE—OMAR FLORES #27*  ②
        ② JOSE HERNANDEZ ✓               MILLVILLE—ROTO CONRRERAS #48  ④
           ALEJANDRO CONSTANTINO ✓                   ~~~~~~~~ GOMEZ ✓

VINELAND—SANTOS DIAZ #58 (FB)           MILLVILLE—JORGE L. CRUZ #35
        ① JOSE PENRO                            ② LAZARO CORTEZ ✓
           JOSE GUTIERREZ ✓

VINELAND—YONI GONZALEZ #57 (YW)         MILLVILLE—JERALDO COTTO #36
        ① TONY GONZALEZ ✓                        ① RENE TORRES ✓
           ANTONIO HERNANDEZ ✓                      CARLOS ORTIZ ✓

VINELAND—OSVALDO AVILES #53 (FB)        VINELAND—ISMAEL ACOSTA #44  ④
        ② JUAN PERAN ✓                  (RCV) ANTONIO GUTIERREZ ✓
           LUIS SANCHEZ ✓

VINELAND—             (FB)              VINELAND—JOSE JUSINO #28  ⑥
                                        (RCV)  ALEXANDER RAMOS ✓

                                        Vineland Trk 27  ②

CARBOARD—MIKE CAPELAS #55               WILINGBORO—ROGELIO SERRANO #56
        JAVIER ALAREZ ✓                          ② HERMAN BUENO ✓
                                                    JORGE PEREZ ✓
Dump on  2/8

YARD—JUAN M. SANTANA ✓                  WILINGBOR—JOHN CAMPHIELD #29
                                                 ② ORLANDO TRUENO ✓
                                                    PEDRO LOPEZ ✓

FL—— GLENN ONCAY      #54 ✓             WILINGBORO—JUAN SANTIAGO #50
FL—— RJ SERRANO       #32 ✓                      ② YAN HERNANDEZ ✓
RL—— ALEX BETANCOURT  #47 ✓                         EIBERTO GOMEZ ✓
RL——                  #39

                                        WILINGBORO—JESUS HERNANDEZ #46
                                                 ② EDDY ALVAREZ ✓
                                                    MAX GUZMAN ✓

02-04-2010

THURSDAY                                    OFF—

NOTE:

MISSING DRIVER:

1. TAKE JESUS FROM #28
2. TAKE CARLOS OTERO FROM WATERFORD

STAN BY HELPER:

1. JOSE SOTELO

| | |
|---|---|
| 17—R/L | 41—R/L |
| 18—R/L | 42—R/L |
| 26—RCY | 43—R/L |
| 27—RCY | 44—RCY |
| 28—RCY | 45—R/L |
| 29—R/L | 46—R/L |
| 30—R/L | 47—R/O |
| 31—R/L | 48—RCY |
| 32—F/L | 49—R/L |
| 33—R/L | 50—R/L |
| 34—R/L | 51—R/L |
| 35—R/L | 52—R/L |
| 36—R/L | 53—R/L |
| 37—R/L | 54—F/L |
| 38—R/L | 55—R/L |
| 39—R/O | 56—R/L |
| 40—R/L | 57—R/L |
| | 58—R/L |

FEBRUARY 04, 2010

**THURSDAY'S SCHEDULE**

SHOP—MIGUEL    HERMINIO    MARCOS    LUIS   DANNY    JAVIER    SAMUEL

COLLINGSWOOD—CARLOS VILLANUEVA #37
(2)   ANTONIO HERNANDEZ
      FERDINAND MARTINEZ

(1)   COLLINGSWOOD—TONY ADORNO #31
(RCY)   ALEJANDRO CONSTANTINO
(DO MULLICA) ()

WATERFORD—JUAN SANTIAGO #46
(2)   ROBERTO HERNANDEZ
      JOGLE HERNANDEZ

WATERFORD—CARLOS OTERO #45
(1)   (RCY)   CARMELO MARTINEZ

NAT'L PARK—LORENZO RAMOS #49
(2)   ESCOLANO GOMEZ
      LEONIDA VAEZ

MILLVILLE—JORGE L. CRUZ #35
(2)   LAZARO GOMEZ

MILLVILLE—JERALDO COTTO #36
(2)   RENE TORRES
      MARINAO ALARCON

MILLVILLE—ROTO. CONTRERAS #48
(4)   (RCY)   ABENK SANTANA
      LEONAR WEEMS
      Vineland Rey (2)

HADDON TWP—MIKE CAPELAS #55
(1)   EUIS MARTINEZ
      BERNARDIN RODRIGUEZ

HADDON TWP—JOSE CARTAGENA #50
(1)   (RCY) JAVIER ALAVEZ

VINELAND—SANTOS DIAZ #58(RN)
(2)   JOSE RIBERO
      LUIS URVINA
      1st demp   10:04

(4)   VINELAND—JOSE JUSINO #28
      (RCY) JESUS HERNANDEZ

VINELAND—(RN)

TABERANCLE—TED BERGOREN #52
(2)   JUAN BERGER
      SEAN BERGOREN

LINDENWOLD—EUSEBIO COLON #30
(1)   CARLOS GOMEZ
      ORALANDO PEREZ

BURLINGTON—ROGER SERRANO #56
(2)   JORGE LOPEZ
      FELIX AQUINO

BURLINGTON—JOHN CAMPFIELD #29
(1)   CECILIO AQUINO
      PEDRO LOPEZ

BARRINGTON—JULIAN ABREU #40
(2)   ABRAHAM LIAN
      FOREAN DIAZ

DELANCO—OMAR FLORES #33
(2)   YAHIR HERNANDEZ

DELANCO—ALEX BETANCOURT #41
(2)   JUSTO JIMENEZ
      CARLOS GOMEZ

CINNAMINSON—RAFAEL ROGUEZ #51
(1)   WILBER CIHALA
      CARLOS CINGUENZA

CINNAMINSON—HERIBERTO DUPREY #42
(2)   ERISTO SERRELA
      ARMANDO CASTANEDA

VINELAND—OSVALDO AVILEZ #53(RN)
(1)   JULIO TORAL
      LUIS SANCHEZ

VINELAND—YONI GONZALEZ #57(YW)
(1)   TONI GONZALEZ

VINELAND—ISMAEL ACOSTA #44
(6)   (RCY) ANTONIO GUTIERREZ

YARD—JUAN M. SANTANA

31
Mullica
(1)

FL——GLEN ONCAY    #54
FL——              #32
RL——RJ SERRANO    #47

FEBRUARY 04, 2010

~~THURSDAY'S SCHEDULE~~

SHOP—MIGUEL    HERMINIO    MARCOS    LUIS    DANNY    JAVIER    SAMUEL

COLLNSGSWOOD—CARLOS VILLANUEVA #37
~~ANTONIO HERNANDEZ~~
~~FERDINAND MARTINEZ~~

COLLINGSWOOD—TONY ADORNO #31
(RCY) ~~ALEJANDRO CONSTANTINO~~
(DO MULLICA)

WATERFORD—JUAN SANTIAGO #46
~~ROBERTO HERNANDEZ~~
~~JOGLI HERNANDEZ~~

WATERFORD—CARLOS OTERO #45
(RCY) ~~CAMERINO MARTINEZ~~

NAT'L PARK—LORENZO RAMOS #49
~~ESGUIN R. GOMEZ~~
~~ELOY ALAVEZ~~

MILLVILLE—JORGE L. CRUZ #35
~~LAZARO CORTEZ~~

MILLVILLE—JERALDO COTTO #36
~~RENE TORRES~~
~~MARINAO FERRGON~~

MILLVILLE—ROTO. CONTRERAS #48
(RCY) ~~ABENR SANTANA~~
~~LEONAR WIEMS~~

HADDON TWP—MIKE CAPELAS #55
~~LUIS MARTINEZ~~
~~BERNALDIN RODRIGUEZ~~

HADDON TWP—JOSE CARTAGENA #8 (SO)
(RCY) ~~JAVIER ALAMEZ~~

VINELAND—SANTOS DIAZ #58(EN)
~~JOSE PIÑERO~~
~~LUIS URVINA~~

VINELAND—JOSE JUSINO #28
(RCY) ~~JESUS HERNANDEZ~~

VINELAND—(EN)

TABERANCLE—TED BERGGREN #52
~~BRIAN BERGGREN~~
SEAN BERGGREN

LINDENWOLD—EUSEBIO COLON #30
~~CARLOS GOMEZ~~
~~ORALANDO PEREZ~~

BURLINGTON—ROGER SERRANO #56
~~JORGE LOPEZ~~
~~PEDRO TERRES~~
~~Felix~~ Aquino

BURLINGTON—JOHN CAMPHIELD #29
~~eSECILIO AQUINO~~
~~FELIX AQUINO~~
Aquino 30,002

BARRINGTON—JULIAN ABREU #40
~~CRISTI KILLIAN~~
FORTINO DIAZ

DELANCO—OMAR FLORES #33
~~YAM HERNANDEZ~~

DELANCO—ALEX BETANCOURT #41
~~ZOSIMO JIMENEZ~~
~~FELIBERTO MENDEZ~~
Gumrys Ortiz

CINNAMINSON—RAFAEL ROGUEZ #51
~~WILLIAM TOMILLA~~
~~CARLOS SINGUENZA~~

CINNAMINSON—HERIBERTO DUPREY #42
~~ERASTO ESTRELLA~~
~~ARMINDO CASTANEDA~~

VINELAND—OSVALDO AVILEZ #53(EN)
~~JULIO TERAN~~
LUIS SANCHEZ

VINELAND—YONI GONZALEZ #57(YW)
~~TONY GONZALEZ~~

VINELAND—ISMAEL ACOSTA #44
(RCY) ~~ANTONIO GUTIERREZ~~

YARD—JUAN M. SANTANA

FL——GLEN ONCAY      #54
FL——             #32
RL——RJ SERRANO      #47

FEBRUARY 05, 2010

FRIDAY'S SCHEDULE

SHOP—MIGUEL MARCOS DANNY LUIS          SAMUEL HERMINIO ~~LORENZO~~

COLLINGSWOOD——TED BERGGREN #52          LINDENWOLD—~~EUSEBIO COLON~~ #30  *Carlos otero*
(RCY)   ~~SEAM BERGGREN~~                               ~~CARLOS GOMEZ~~
        *Jose Sotelo*

COLLINGSWOOD—CARLOS VILLAMONTE #37
COLLINGSWOOD—~~JUAN SANTIAGO~~ #50      CINNAMINSON—RAFAEL RODRIGUEZ #51
        ~~ROBERTO HERNANDEZ~~                  ~~WILLIAM TOVILLA~~
        ~~LUIS URVINA~~                                ~~CAMERINO MARTINEZ~~

BARRINGTON—JULIAN ABREU #40             CINNAMINSON—HERIBERTO DUPREY #42
        ~~CRIST KILLIAN~~                            ~~AMRMANDO CASTANEDA~~
        ~~FORTINO DIAZ~~                             ~~ERASTO ESTRELLA~~

                                        MILLVILLE—OMAR FLORES #27*
BARRINGTON—JOSE CARTAGENA #48 ⑦         MILLVILLE—ROTO CONRRERAS #48
        ~~IOGLE HERNANDEZ~~                       ~~ESGUIN R. GOMEZ~~
        ~~ALEJANDRO CONSTANTINO~~

VINELAND—SANTOS DIAZ #58 ~~(SB)~~       MILLVILLE—JORGE L. CRUZ #35
        ~~JOSE PINERO~~                             ~~LAZARO CORTEZ~~
        *Josian Gimenez*

VINELAND—YONI GONZALEZ #57 (YW)         MILLVILLE—JERALDO COTTO #36
        ~~TONY GONZALEZ~~                          ~~RENE TORRES~~
        ~~ANTONIO HERNANDEZ~~                      ~~ISMAEL RAMOS~~
                                                   ~~Dani~~

VINELAND—OSVALDO AVILES #53 ~~(SB)~~    VINELAND—ISAMEL ACOSTA #44
        ~~JULIO TERAN~~                         (RCY) ~~ANTONIO GUTIERREZ~~
        ~~LUIS SANCHEZ~~

VINELAND—                   ~~(SB)~~    VINELAND—JOSE JUSINO #28
                                        (RCY)  ~~ALEXANDER RAMOS~~

CARBOARD—MIKE CAPELAS #55               WILINGBORO—ROGELIO SERRANO #56
        ~~JAVIER ALAVEZ~~                         ~~FELIX AQUINO~~
                                                  ~~PEDRO LOPEZ~~

YARD—~~JUAN M. SANTANA~~                WILINGBOR—JOHN CAMPHIELD #29
                                                  ~~CECILIO AQUINO~~
                                                  ~~PEDRO LOPEZ~~
                                                  *Juan Santiago* (50)
FL—— GLENN ONCAY     #54                WILINGBORO—~~ALEX BETANGORT~~ #41
FL—— *25*            #32                          ~~YMI HERNANDEZ~~
RL—— ~~RJ SERRANO~~ *Alex* #47                   ~~BRIAN KREIDER~~
RL——                #39                          *Alberto Mendez*
                                        WILINGBORO—JESUS HERNANDEZ #46
                                                  ~~ELOY ALAVEZ~~
                                                  ~~MAX GUZMAN~~

FEBRUARY 08, 2010

MONDAY'S SCHEDULE

SHOP—MIGUEL    HERMINIO    LUIS    MARCOS    JAVIER    DANNY

COLLINGSWOOD—JULIAN ABREU #40
(1) PEDRO BARROSO
    FORTINO DIAZ

COLLINGSWOOD—DUPREY #42
(1) (RCY) ARMANDO CASTANEDA
    (HELP MIKE) ERASTO ESTRELDA
    Do not help

WATERFORD—JUAN SANTIAGO #50
(1) ROBERTO HERNANDEZ
    JOSE HERNANDEZ

WATERFORD—CARLOS OTERO #33
(1) CAMERINO MARTINEZ

MILLVILLE—OMAR FLORES #27    (2)
MILLVILLE—RTO. CONTRERAS #48   (2)
(RCY) ABNER SANTANA
    LEONARD WEEMS

MILLVILLE—JERALDO COTTO #36
(1) ISRAEL RAMOS
    RENE TORRES

MILLVILLE—JORGE L. CRUZ #35
(1) LAZARO GOMEZ

VINELAND—YONI GONZALEZ #57 (VW)
(1) TONY GONZALEZ
    ANTONIO HERNANDEZ

VINELAND—SANTOS DIAZ #58
(1) JOSE RUBIO
    LUIS URVINA

VINELAND—OSVALDO AVILEZ
(1) JULIO BERAN    53

VINELAND—JESUS HERNANDEZ
(1) YM HERNANDEZ    46

VINELAND—JOSE JUSINO #28
(2) FELIBERTO VENANDEZ

VINEALND—ISMAEL ACOSTA #44
(1) ANTONIO GUTIERREZ

HADDON HT—CARLOS VILLAMONTE #37
(1) CARLOS GOMEZ

HADDON HTS—TED BERGGREN #52
(1) DIGNA HEISLER
    SEAN BERGGREN

HADDON HTS—EUSEBIO COLON #30
(1) CRISINA JULIAN
    ORLANDO PEREZ

HARRISON—LORENZO RAMOS #49
(2) ESCOLASTICO GOMEZ
    ELOY ALAVEZ

HARRISON—TONY ADORNO #31
(RCY) LUIS HERNANDEZ
(1) JOSE MOLINER

LAWNSIDE—RAFAEL RODRIGUEZ #51
(1) WILBERT FAVELA
    CARLOS SINGUENZA

HADDON TWP—MIKE CAPELAS #55
(2) MARIANO ALARCON
    JOSE MARTINEZ

HADDON TWP—JOSE CARTAGENA #43
(1) ALEJANDRO CONSTANTINO
    FERDINAND MARTINEZ

HADDON TWP—

WILLINGBORO—ROGER SERRANO #56
(1) FELIX AQUINO
    JORGE LOPEZ

WILLINGBORO—JOHN CAMPHIELD #29
(1) CRISTOBAL HERNANDEZ
    PEDRO LOPEZ

WILLINGBORO—ALEX BETANCOURT #41
(1) CARLOS ORTIZ

FL—GLENN ONCAY    #54
RL—RJ SERRANO    #44  (2)
RL—    #39

Single Stream (S.J.) Spring Hill Apt. (1)

FEBRUARY 08, 2010

MONDAY'S SCHEDULE

SHOP—MIGUEL    HERMINIO    LUIS  MARCOS    JAVIER     DANNY


COLLINGSWOOD—JULIAN ABREU #40
    CRISTY KELLIAN ~Armando~
    FOBINO DIAZ

COLLINGSWOOD—DUPREY  #42
(RCY) ARMANDO CASTANEDA
(HELP MIKE) ERNESTO ESTRELLA

WATERFORD—JUAN SANTIAGO #50
    ROBERTO HERNANDEZ
    JOSE HERNANDEZ

WATERFORD—CARLOS OTERO #46 (22)
    CANDIDO MARTINEZ

~belville - Owar pcus (21)~
MILLVILLE—RTO. CONTRERAS #48
(RCY) ALBERT SANTANA
    LEONARD WEEMS

MILLVILLE—JERALDO COTTO #36
    ISMAEL RAMOS
    RENE TORRES

MILLVILLE—JORGE L. CRUZ #35
    LAZARO CORTEZ

VINELAND—YONI GONZALEZ #57 (VW)
    TONY GONZALEZ
    ANTONIO HERNANDEZ

VINELAND—SANTOS DIAZ #58 (38)
    JOSE PINERO
    LUIS URVINA

VINELAND—OSVALDO AVILEZ (RD)
    JULIO FERAN
    JOSE SOTELO

VINELAND—JESUS HERNANDEZ (GN)
    LUIS SANCHEZ
    ~signature~

VINELAND—JOSE JUSINO #28
    ALEX RAMOS
    ~signature~

VINELAND—ISMAEL ACOSTA #44
    ANTONIO GUTIERREZ

~yaan - signature~

HADDON HT—CARLOS VILLAMONTE #37
    CARLOS GOMEZ

HADDON HTS—TED BERGGREN #52
    BRIAN BERGGER
    SEAN BERGGREN

HADDON HTS—EUSEBIO COLON #30
    PEDRO LOPEZ
    ORALNDO PEREZ

HARRISON—LORENZO RAMOS #49
    ESTEBAN GOMEZ
    BBOY ALAVEZ

HARRISON—TONY ADORNO #31
(RCY) JAVIER ALAVEZ
    ZOBRO JIMENEZ

LAWNSIDE—RAFAEL RODRIGUEZ #51
    WILLIE ESTRELLA
    CARLOS SINGUENZA

HADDON TWP—MIKE CAPELAS #55
    BERNARDO RODRIGUEZ
    LUIS MARTINEZ

HADDON TWP—JOSE CARTAGENA #43
    ALEJANDRO CONSTANTINO
    FERDINAND MARTINEZ

HADDON TWP—OMAR FLORES #33

~willijard - Alex Belant (41)~
    ~signature~
WILLINGBORO—ROGER SERRANO #56
    FELIX AQUINO
    JORGE LOPEZ

WILLINGBORO—JOHN CAMPHIELD #29
    CECILIO HERNANDEZ
    YIMI HERNANDEZ
    ~signature~

FL—GLEN ONCAY       #54
FL—                 #32
RL—RJ SERRANO       #47
RL—                 #39

FRIDAY

OFF---TONY ADORNO

NOTES:                              02-05--10

COLLINGSWOOD TRASH:   GET KNIGHT PARK!

COLLINGSWOOD RECYCLING:  GET COLLINGSWOOD ARMS 30 WASHINGTON AVE.
                                          BACK DOWN DRIVEWAY OFF MAPLE AVE.

MISSING DRIVERS

1.  TALE OMAR FLORES
2.  CALL LORENZO RAMOS
3.  TAKE CARLOS VILLAMONTE
4.  TAKE RJ SERRAO
5.  TAKE HERMINO

STAND BY:

1.  BERNALDINO RODRIGUEZ
2.  NEW HELPER

| | |
|---|---|
| 17—R/L ████████████ | 41—R/L |
| 18—R/L | 42—R/L |
| 26—RCY | 43—R/L |
| 27—RCY | 44—RCY |
| 28—RCY | 45—R/L |
| 29—R/L | 46—R/L |
| 30—R/L | 47—R/O |
| 31—R/L | 48—RCY |
| 32—R/L | 49—R/L |
| 33—R/L | 50—R/L |
| 34—R/L | 51—R/L |
| 35—R/L | 52—R/L |
| 36—R/L | 53—R/L |
| 37—R/L | 54—F/L |
| 38—R/L | 55—R/L |
| 39—R/O | 56—R/L |
| 40—R/L | 57—R/L |
| | 58—R/L |

FEBRUARY 05, 2010

SATURDAY'S SCHEDULE

SHOP—MIGUEL    MARCOS    JAVI    DANNY  LORENZO    LUIS

VINELAND—YONI GONZALEZ  #57(YW)
　　　　　TONY GONZALEZ

VINELAND—SANTOS DIAZ  #58(▮▮)
　　　　　ANTONIO HERNANDNEZ

VINELAND—OSVALDO AVILES #53(▮▮)
　　　　　JESUS HERNANDEZ
　　　　　LUIS SANCHEZ

VINELAND—▮▮▮▮▮▮▮ #46(▮▮)
　　　　　▮▮▮▮ TERAN
　　　　　(IF IS SNOWING)

TRUCK WASH—

FL—— GLENN ONCAY    #54
FL——              #32

| 17 | 41 |
|----|----|
| 18 | 42 |
| 26 | 43 |
| 27—▮▮▮▮▮▮ | 42 |
| 28 | 44 |
| 29 | 45 |
| 30 | 46 |
| 31 | 47 |
| 32 | 48 |
| 33 | 49 |
| 34 | 50 |
| 35 | 51 |
| 36 | 52 |
| 37 | 53 |
| 38 | 54 |
| 39 | 55 |
| 40 | 56 |
|    | 57 |
|    | 58 |

02-08-10

MONDAY                                                          OFF——

NOTES:

JUAN SANTIAGO:  TRY TO DUMP ALL LOADS IN CUMBERLAND

### MISSING DRIVERS

1.  TAKE RJ FROM ROLL OFF

### STAN BY HEELPER

1.  FILIBERTO MENDEZ
2.  USE NEW HELPER
3.  TAKE FROM MILLVILLE
4.  TAKE FORM HADDON HTS.

| | |
|---|---|
| 17—R/L | 41—R/L |
| 18—R/L | 42—R/L |
| 26—RCY | 43—R/L |
| 27—RCY | 44—RCY |
| 28—RCY | 45—R/L |
| 29—R/L | 46—R/L |
| 30—R/L | 47—R/O |
| 31—R/L | 48—RCY |
| 32—F/L | 49—R/L |
| 33—R/L | 50—R/L |
| 34—R/L | 51—R/L |
| 35—R/L | 52—R/L |
| 36—R/L | 53—R/L |
| 37—R/L | 54—F/L |
| 38—R/L | 55—R/L |
| 39—R/L | 56—R/L |
| 40—R/L | 57—R/L |
| | 58—R/L |

FEBRUARY 09, 2010                                    (43)

TUESDAY'S SCHEDULE

SHOP—MIGUEL HERMINIO    MARCOS   JAVI    DANNY  SAMUEL  LORENZO

COLLINGSWOOD—JULIAN ABREU#40        LINDENWOLD—EUSEBIO COLON  #30
  ①  CRISP KILLIAN                    ①  CARLOS GOMEZ
      FORTINO DIAZ                          ORLANDO PEREZ

COLLINGSWOOD—E. DUPREY #42          TABERNACLE—TED BERGGREN #52
(RCY) ERASTO ESTRELLA                 ①  INGA WENGER
      MAX GUZMAN                            SED BERGGREN
      (GO HELP MIKE)

WATERFORD—CARLOS OTERO #34          HARRISON—TONY ADORNO  #31
(RCY) CAMERINO MARTINEZ               ①  ZOSIMO JIMENEZ
  ①                                        JUSTIN ALVAREZ

WATERFORD—JUAN SANTIAGO #50         HARRISON—LORENZO RAMOS  # 49
  ①  JOSE HERNANDEZ                  ②  ESTEBAN GOMEZ
      ROBERTO HERNANDEZ                    ELOY ZAPATA

MILLVILLE—CARLOS VILLAMONTE #35     BURLINGTON—ALEX BETANCOURT #41
  (1) LAZARO CORTEZ                   ①  GREGORIO AQUINO

MILLVILLE—GERALDO COTTO #36         BURLINGTON—RJ SERRANO  #37
  ①  ISMAEL RAMOS                  ① (new) JOHN SOTO
      RENE TORRES                          DAGOBERTO CONTRERAS

MILLVILLE—RTO. CONTRERAS  #48       EDGEWATER—RAFAEL RODRZ. #51
  ④  ABNER SALDANA                   ①  WILLIAM PADILLA
      LEONARDO WEEMS                       CARLOS SINGUENZA

HADDON TWP—JOSE CARTAGENA #43       EDGEWATER—OMAR FLORES #33
  ①  HERNANDO MARTINEZ               ①  ARMANDO CASTANEDA
      ALEJANDRO CONSTANTINO

HADDON TWP—MIKE CAPELAS #55         VINELAND—ISMAEL ACOSTA #44
  ②  IGLESIAS HERNANDEZ              ④  ANTONIO GUTIERREZ
      MARIANO ALARCON

VINELAND—SANTOS DIAZ #58            VINELAND—YONI GONZALEZ #57 (YW)
  ①  JESUS URENA                     ①  TONY GONZALEZ
      JOSE PINERO                          ANTONIO HERNANDEZ

VINELAND—JESUS HERNANDEZ #46        VINELAND—OSVALDO AVILES #53
  ①  FERBERTO MENDEZ                 ①  JULIO BELTRAN

VINELAND—JOSE JUSINO  #28           WILLINGBORO—ROGER SERRANO #56
  ④ (RCY) ALEXANDER RAMOS            ①  FELIX AQUINO
                                            MINER HERNANDEZ

                                    WILLINGBORO—JOHN CAMPHIELD #29
                                     ①  CARLOS ORTIZ
                                            PEDRO LOPEZ

YARD—JUAN MESA LANA

FL—— GLENN ONCAY          #54
FL——                      #32
RL——                      #47
RL——                      #39

TUESDAY

02-09-10                    OFF—

NOTES:

EDWIN : MISSING DRIVER

1. USE CARLOS VILLAMONTE
2. TAKE HERMINIO FORM THE SHOP
3. CALL CUBA
4. GIVE ESGUIN TO COLLINGSWOOD RCY, DO GRASS AFTER RCY .
5. TAKE RJ SERRANO

STAND BY:

1. CRISTIAN RIOS
2. EDWIN GONZALEZ
3. EZEQUIEL GONZALEZ

17—R/L ███████         41—R/L
18—R/L WATERFORD       42—R/L
26—RCY                 43—R/L
27—RCY                 44—RCY
28—RCY                 45—R/L ███████████
29—R/L                 46—R/L
30—R/L                 47—R/O
31—R/L                 48—RCY
32—F/L                 49—R/L
33—R/L                 50—R/L
34—R/L                 51—R/L
35—R/L                 52—R/L
36—R/L                 53—R/L
37—R/L                 54—F/L
38—R/L ███████████     55—R/L
39—R/O                 56—R/L
40—R/L                 57—R/L
                       58—R/L

FEBRUARY 09, 2010

TUESDAY'S SCHEDULE

SHOP—MIGUEL HERMINIO    MARCOS  JAVI    DANNY  SAMUEL  LORENZO

COLLINGSWOOD—JULIAN ABREU #40
~~GE~~ ~~E~~ LPIAN
F~~~~

COLLINGSWOOD—E. DUPREY #42
(RCY) E~~~~ ESTRELLA
MARIANO ALARCON ~~~~ *Guevara*
(GO HELP MIKE)

WATERFORD—CARLOS OTERO #34
(RCY) CAM~~~~ ~~~~ MEZ

WATERFORD—JUAN SANTIAGO #50
JO~~~~ ~~~~ EZ
ROBERTO HERNANDEZ

MILLVILLE—JORGE L. CRUZ #35   *Carlos Villanonte*
LA~~~~ ORTEZ

MILLVILLE—GERALDO COTTO #36
I~~~~ OS
R~~~~ RES

MILLVILLE—RTO. CONTRERAS  #48
A~~~~ ANA
LE~~~~ EMS

HADDON TWP—JOSE CARTAGENA #43
F~~~~
~~~~ NO

HADDON TWP—MIKE CAPELAS #55
LE~~~~ EZ
~~~~ ON

VINELAND—SANTOS DIAZ #58 ~~~~
~~~~ RO

VINELAND—JESUS HERNANDEZ #46 ~~~~
LUIS ~~~~ *r*

VINELAND—JOSE JUSINO  #28
(RCY) AL~~~~ AMOS

YARD—J~~~~ ~~TANA

LINDENWOLD—EUSEBIO COLON  #30
~~~~
~~~~

TABERNACLE—TED BERGGREN #52
~~~~ GER
SE~~~~ REN

HARRISON—TONY ADORNO  #31
Z~~~~ EZ
JAV~~~~ VEZ

HARRISON—LORENZO RAMOS # 49
~~~~ EZ
EL~~~~

BURLINGTON—ALEX BETANCOURT #41
~~~~

BURLINGTON—CARLOS VILLAMONTE #37   *R.J. Serrano*
JO~~~~
PEDRO LOPEZ ~~~~ *Lucas*

EDGEWATER—RAFAEL RODRZ. #51
~~~~ LA
CA~~~~ ENZA

EDGEWATER—OMAR FLORES #33
PEDRO LOPEZ
A~~~~ CASTANEDA

VINELAND—ISMAEL ACOSTA #44
A~~~~ RREZ

VINELAND—YONI GONZALEZ #57 (YW)
~~~~ EZ
A~~~~ DEZ

VINELAND—OSVALDO AVILES #53 (~~~~)
J~~~~ AN

WILLINGBORO—ROGER SERRANO #56
F~~~~ NO
~~~~ EZ

WILLINGBORO—JOHN CAMPHIELD #29
FELIBERTO MEND~~~~ *wife*
JOSE SOTELO  ~~~~ *Lopez*

FL—— GLENN ONCAY        #54
FL—— RJ SERRANO         #32
RL——                    #47
RL——                    #39

# EXHIBIT F

## 343 — Abreau, Julian — TIME CARD (WEEKLY) — DEPARTMENT 2-9-10

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 6:15 | 12:35 | | | | 7:33 |
| TUE | 6:00 | 12:00 | | | | 7:40 |
| WED | 6:00 | 1:08 | | | | 9:05 |
| THU | 6:00 | 1:40 | | | | 11:40 |
| FRI | 6:16 | 12:57 | | | | 8:24 |
| SAT | | | | | | |
| SUN | | | | | | |

44:32

## 322 — Cartegena, Jose — TIME CARD (WEEKLY) — DEPARTMENT 2-9-10

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 6:00 | 11:58 | 12:08 | 2:05 | 10:43 | |
| TUE | 6:52 | | 5:17 | 10:11 | | |
| WED | 5:00 | | 2:00 | 10:00 | | |
| THU | 6:58 | | 1:00 | 1:35 | 8:31 | |
| FRI | 6:50 | | 1:00 | 8:48 | | |
| SAT | | | | | | |
| SUN | | | | | | |

47:33

## 399 — Adorno, Anthony — TIME CARD (WEEKLY) — DEPARTMENT 2-9-10

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 6:00 | 6:46 | 2:05 | 9:07 | | |
| TUE | 6:41 | | 2:31 | 9:20 | | |
| WED | 6:45 | | 1:22 | 9:21 | | |
| THU | 6:46 | | 2:25 | 9:25 | | |
| FRI | 6:43 | — OFF — | | 0 | | |
| SAT | | | | | | |
| SUN | | | | | | |

35-17

## 303 — Capeles, Mike — TIME CARD (WEEKLY) — DEPARTMENT 2-9-10

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 6:37 | | 5:05 | 12:01 | | |
| TUE | 6:23 | | 4:03 | 10:03 | | |
| WED | 6:35 | | 3:55 | 10:30 | | |
| THU | 6:30 | | 2:18 | 9:15 | | |
| FRI | 6:43 | | 4:28 | 11:53 | | |
| SAT | | | | | | |
| SUN | | | | | | |

54:3

## TIME CARD (WEEKLY) — Betancourt, Alexis

SECTION: 519
DEPARTMENT: 2-9-10

Year: ____  Month: ____

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 8:02 | | 8:58 | 12:31 | | |
| TUE | | | 11:26 | 11:05 | | |
| WED | 8:674 | | 12:679 | 10:53 | | |
| THU | 8:678 | | 4:943 | 10:02 | | |
| FRI | 8:912 | | 9:865 | 9:53 | | |
| SAT | | | | | | |
| SUN | | | | | | |

54:24

Signature: _____
www.timeclocks.com
T111

## TIME CARD (WEEKLY) — Acosta, Ismael

SECTION: 361
DEPARTMENT: 2-9-10

Year: ____  Month: ____

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 8:502 | 44:0 | 8:203 | 8 | | |
| TUE | 8:415 | | 8:460 | 11 | 40 | |
| WED | 8:405 | | 8:649 | 13:45 | | |
| THU | 8:412 | | 8:648 | 8:1 | | |
| FRI | 8:446 | | 8:457 | 11:11 | 15 | |
| SAT | | | | | | |
| SUN | | | | | | |

57-12

Signature: _____
www.timeclocks.com
T111

## TIME CARD (WEEKLY) — Aviles, Osvaldo

SECTION: 3029
DEPARTMENT: 2-9-10

Year: ____  Month: ____

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 8:603 | | 8:978 | 10 | 40 | |
| TUE | 8:603 | | 8:478 | 11:10 | | |
| WED | 8:602 | | 8:347 | 10:41 | | |
| THU | 8:516 | | 4:658 | 12:30 | | |
| FRI | 8:512 | | 8:548 | 12:40 | | |
| SAT | | | | | | |
| SUN | | | | | | |

57:46

Signature: _____
www.timeclocks.com
T111

## TIME CARD (WEEKLY) — Berggren, Ted

SECTION: 382
DEPARTMENT: 2-9-10

Year: ____  Month: ____

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 8:503 | | 8:255 | 10:10 | | |
| TUE | 8:501 | | 8:365 | 10:03 | | |
| WED | 8:512 | | 8:452 | 8:39 | | |
| THU | 8:516 | | 4:465 | 11:37 | | |
| FRI | 8:504 | | 8:504 | 9:33 | | |
| SAT | | | | | | |
| SUN | | | | | | |

49-12

Signature: _____
www.timeclocks.com
T111

**Time Card 1**

SECTION: 3020
Contreras, Roberto
DEPARTMENT: 2-9-10
TIME CARD (WEEKLY)
T111   www.iimezimeclocks.com   Signature

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 5:16 | | 9:20 | 9:04 | | |
| TUE | 5:14 | | 9:33 | 10:37 | | |
| WED | 5:13 | 4:55 | 9:23 | 12:10 | | |
| THU | 5:12 | | 9:55 | 12:10 | | |
| FRI | 5:06 | | 5:45 | 10:53 | | |
| SAT | | | | | | |
| SUN | | | | | | |

54:54

**Time Card 2**

SECTION: 4529
Cotto, Jeraldo
DEPARTMENT: 2-9-10
TIME CARD (WEEKLY)
T111   www.iimezimeclocks.com   Signature

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 4:58 | | 4:55 | 11:31 | | |
| TUE | 4:58 | | 4:55 | 10:04 | | |
| WED | 5:01 | | 4:53 | 11:44 | | |
| THU | 4:59 | | 4:53 | 11:16 | | |
| FRI | 4:26 | | 4:13 | 11:38 | | |
| SAT | | | | | | |
| SUN | | | | | | |

56:13

**Time Card 3**

SECTION: 471
Colon, Eusubio
DEPARTMENT: 2-9-10
TIME CARD (WEEKLY)
T111   www.iimezimeclocks.com   Signature

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 5:07 | 1:12 | | 8:38 | | |
| TUE | 4:52 | | 2:01 | 8:58 | | |
| WED | 5:03 | | | 9:14 | | |
| THU | 5:13 | | 2:01 | 9:47 | | |
| FRI | — | | cont/next — | | | |
| SAT | | | | | | |
| SUN | | | | | | |

35:32

**Time Card 4**

SECTION: 3025
Campsfield, John
DEPARTMENT: 2-9-10
TIME CARD (WEEKLY)
T111   www.iimezimeclocks.com   Signature

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 4:59 | | 1:58 | 8:30 | | |
| TUE | 4:52 | | 2:13 | 9:02 | | |
| WED | 4:52 | | 2:13 | 9:46 | | |
| THU | 5:12 | | 2:46 | 10:07 | | |
| FRI | 4:52 | | 5:05 | | | |
| SAT | | | | | | |
| SUN | | | | | | |

52:50

## TIME CARD (WEEKLY) — Flores, Omar

SECTION 400 | DEPARTMENT 2-9-10

Year: ___  Month: ___

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 6:54 | | 12:22 | 2:46 | | |
| TUE | 6:11 | | 9:38 | 9:35 | | |
| WED | 5:11 | | 2:08 | 10:00 | | |
| THU | 5:13 | | 2:06 | 10:20 | | |
| FRI | 5:12 | | 2:55 | | | |
| SAT | | | | | | |
| SUN | | | | | | |

Signature ___  48·17  www.timeclocks.com  T111

## TIME CARD (WEEKLY) — Duprey, Heriberto

SECTION 3028 | DEPARTMENT 2-9-10

Year: ___  Month: ___

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 6:04 | | 2:15 | 10:23 | | |
| TUE | 6:23 | | 2:24 | 9:27 | | |
| WED | 6:00 | | 2:08 | 11:49 | | |
| THU | | | 2:33 | 10:11 | | |
| FRI | 6:15 | | 2:55 | | | |
| SAT | | | | | | |
| SUN | | | | | | |

Signature ___  50.40  www.timeclocks.com  T111

## TIME CARD (WEEKLY) — Diaz, Santos

SECTION 3040 | DEPARTMENT 2-9-10

Year: ___  Month: ___

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 6:50 | | 2:53 | 10:15 | | |
| TUE | 6:53 | | 2:58 | 10:27 | | |
| WED | 6:09 | | 2:35 | 9:40 | | |
| THU | 6:02 | | 2:55 | 12:28 | | |
| FRI | 6:04 | | 5:56 | 11:55 | | |
| SAT | | | | | | |
| SUN | | | | | | |

Signature ___  54·54  www.timeclocks.com  T111

## TIME CARD (WEEKLY) — Cruz, Sr., Jorge L.

SECTION 374 | DEPARTMENT 2-9-10

Year: ___  Month: ___

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 6:48 | | 2:55 | | | |
| TUE | | | — | exal out | — | |
| WED | | | exal out | | | |
| THU | | | | 11:19 | | |
| FRI | 6:07 | | 2:56 | 11:31 | | |
| SAT | 6:02 | | | | | |
| SUN | | | | | | |

Signature ___  22 - 50  www.timeclocks.com  T111

**TIME CARD (WEEKLY)** — Jusino, Jose — SECTION 3031 — DEPARTMENT 2-9-10

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 8:55 | | | | | 3:3 |
| TUE | 8:43 | | 11:27 | | | |
| WED | 8:48 | | | 14 | 14 | |
| THU | 8:45 | | 2:07 | 12 | 50 | |
| FRI | 8:43 | | 5:37 | 11 | 35 | |
| SAT | | | | | | |
| SUN | | | | | | |

54:55

Signature
www.timesmclocks.com

---

**TIME CARD (WEEKLY)** — Hernandez-Miguel, Jesus — SECTION 3030 — DEPARTMENT 2-9-10

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | | | 9:00 | | 9:57 | |
| TUE | 8:43 | | 9:03 | | 11:00 | |
| WED | 8:43 | | 2:40 | | 10:03 | |
| THU | 8:43 | | 5:15 | | 12:41 | |
| FRI | 8:40 | | 5:00 | | 12:14 | |
| SAT | | | | | | |
| SUN | | | | | | |

55:55

Signature
www.timesmclocks.com

---

**TIME CARD (WEEKLY)** — Gonzalez, Yoni — SECTION 343 — DEPARTMENT 2-9-10

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 8:00 | | 3:48 | 10:04 | | |
| TUE | 8:43 | | 2:55 | 9:52 | | |
| WED | 8:48 | | 2:40 | 9:47 | | |
| THU | 8:43 | | 5:17 | 12:03 | | |
| FRI | 8:48 | | 5:45 | 10:06 | | |
| SAT | | | | | | |
| SUN | | | | | | |

55:14

Signature
www.timesmclocks.com

---

**TIME CARD (WEEKLY)** — Ramos, Lorenzo Gregori — SECTION 515 — DEPARTMENT 2-9-10

| | MORNING | | AFTERNOON | | OVERTIME | |
|---|---|---|---|---|---|---|
| | IN | OUT | IN | OUT | IN | OUT |
| MON | 8:00 | | 5:53 | 10:50 | | |
| TUE | 8:22 | | 5:41 | 13:34 | | |
| WED | 8:08 | | 5:08 | 3:50 | | |
| THU | 8:01 | | 5:18 | 12:04 | | |
| FRI | 8:08 | | 5:07 | 12:41 | | |
| SAT | | | | | 11:50 | 0 |
| SUN | | | | | | 4:15 |

70-05

Signature
www.timesmclocks.com

## Time Card 1 — Rodriguez, Rafael

**SECTION** 358  **DEPARTMENT** 2-9-10

TIME CARD (WEEKLY)

Year:___ Month:___

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 5:01 | | | | 11:05 | |
| TUE | 5:00 | | | | 9:51 | |
| WED | 4:56 | | | | 9:02 | |
| THU | 4:52 | | | | 9:10 | |
| FRI | 4:45 | | | | 10:07 | |
| SAT | | | | | | |
| SUN | | | | | | |

49-13

Signature ___
www.timetimeclocks.com
T111

## Time Card 2 — Otero, Carlos

**SECTION** 3039  **DEPARTMENT** 2-9-10

TIME CARD (WEEKLY)

Year:___ Month:___

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 5:08 | | | | 8:37 | |
| TUE | 4:46 | | 7:00 | | 9:00 | |
| WED | 4:57 | | 7:37 | | 9:47 | |
| THU | | | 1:25 | | 8:35 | |
| FRI | 4:48 | | 7:25 | | 9:04 | |
| SAT | | | | | | |
| SUN | | | | | | |

47-03

Signature ___
www.timetimeclocks.com
T111

## Time Card 3 — Oncay, Glenn

**SECTION** 319  **DEPARTMENT** 2-9-10

TIME CARD (WEEKLY)

Year:___ Month:___

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 6:18 | | 5:07 | | 9:22 | |
| TUE | 5:20 | | 5:43 | | 4:41 | |
| WED | 5:24 | | 4:15 | | 10:33 | |
| THU | | | 4:57 | | 8:12 | |
| FRI | 5:51 | | 2:55 | | | |
| SAT | | | | | | |
| SUN | | | | | | |

51-32

Signature ___
www.timetimeclocks.com
T111

## Time Card 4 — Morales, Edwi

**SECTION** 314  **DEPARTMENT** 2-9-10

TIME CARD (WEEKLY)

Year:___ Month:___

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 6:01 | | 7:25 | | | |
| TUE | 6:05 | | 6:57 | | | |
| WED | 4:34 | | 6:51 | | | |
| THU | 4:07 | | 6:71 | | | |
| FRI | 6:16 | | 6:16 | | | |
| SAT | | | | | | |
| SUN | 7:18 | | 12:51 | | | |

Signature ___
www.timetimeclocks.com
T111

**TIME CARD (WEEKLY)**

---

**Card 1**

SECTION 701   DEPARTMENT 2-9-10
Morales, Javie

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 7:58 | | 12:05 | 1:07 | | 4:02 |
| TUE | 7:58 | | 12:51 | 11 | 10:55 | |
| WED | 7:57 | | 7:06 | 11 | 10:03 | |
| THU | 7:01 | | 12:56 | 10 | 10:03 | |
| FRI | | | | | 0 | |
| SAT | | | 12:55 | 5 | 08 | |
| SUN | | | | | | |

47·50

Signature
www.timeandclocks.com   T111

---

**Card 2**

SECTION 320   DEPARTMENT 2-9-10
Serrano, Roger

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 6:31 | | 5:53 | 12 | 6:59 | |
| TUE | 4:05 | | 5:20 12 | 12 | 50 | |
| WED | 4:05 | | 6:46 | 9 | 44 | |
| THU | 4:21 | | 6:55 | 11 | 23 | |
| FRI | 4:17 | | 5:56 | 13 | 23 | |
| SAT | | | | | | |
| SUN | | | | | | |

54·59

Signature
www.timeandclocks.com   T111

---

**Card 3**

SECTION 502   DEPARTMENT 2-9-10
Serrano, R. J.

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 5:06 | | 4:30 | 11 | 00 | |
| TUE | 4:57 | | 9:45 | 10 | 45 | |
| WED | 4:41 | | 9:35 | 9 | 35 | |
| THU | 5:18 | | 5:40 | 11 | 42 | |
| FRI | 4:17 | | 4:00 (1) 11-30 | | | |
| SAT | | | | | | |
| SUN | | | | | | |

54·25

Signature
www.timeandclocks.com   T111

---

**Card 4**

SECTION 412   DEPARTMENT 2-9-10
Santiago, Juan

| | MORNING IN | OUT | AFTERNOON IN | OUT | OVERTIME IN | OUT |
|---|---|---|---|---|---|---|
| MON | 4:50 | | 3:08 | 10 | 00 | |
| TUE | 4:59 | | 4:58 | 11 | 05 | |
| WED | 4:58 | | 9:35 | 9 | 53 | |
| THU | 4:53 | | 9:53 | 10 | 37 | |
| FRI | 4:17 | | 4:57 | 11 | 54 | |
| SAT | | | | | | |
| SUN | | | | | | |

53·79

Signature
www.timeandclocks.com   T111



# EXHIBIT G

# Condensed Transcript
# Testimony of:

# ANTHONY COLASURDO

# Date: November 9, 2012

## Alavez-Lopez, et al. v. South Jersey Sanitation Co., et al.

## No.:  USDC NJ 1:10-cv-05647

R&K Reporting Inc.
PO Box 1372
Levittown, Pennsylvania 19058
Phone: 215-946-7009
Fax: 215-949-1867
Email: rkreporting@gmail.com

## Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE
 3
   JAVIER ALAVEZ-LOPEZ,         : CIVIL ACTION
 4 ANTONIO HERNANDEZ,           :
   WILLIAM TOVILLA,             :
 5 ALEJANDRO CONSTANTINO,       :
   ANTONIO GUTIERREZ, MARCO     :
 6 ANTONIO ORTEGA, on           :
   behalf of themselves and     :
 7 those similarly              :
   situated,                    :
 8            Plaintiffs        : NO. 1:10-cv-05647
                                :      (NLH/KMW)
 9      vs.                     :
                                :
10 SOUTH JERSEY SANITATION      :
   CO., INC. and ANTHONY        :
11 COLARSURDO,                  :
                 Defendants     :
12
              Cherry Hill, New Jersey
13               November 9, 2012
14
15            Pretrial examination of ANTHONY
16 COLASURDO, taken on behalf of the Plaintiff at
17 the offices of Swartz Swidler, 1878 Marlton
18 Pike East, Cherry Hill, New Jersey, on the
19 above date, commencing at 1:55 p.m., before
20 Linda A. Ricciardi, Certified Court Reporter.
21
22            R&K REPORTING INC.
                Court Reporting Services
23                 PO Box  1372
            Levittown, Pennsylvania  19058-1372
24    Phone: 215-946-7009   Fax: 215-949-1867
```

## Page 2

```
 1 APPEARANCES:
 2    SWARTZ SWIDLER, LLC
      BY:  RICHARD S. SWARTZ, ESQUIRE
 3         MANALI ARORA, ESQUIRE
      1878 Marlton Pike East
 4    Society Hill Office Park, Suite 10
      Cherry Hill, New Jersey  08003
 5    856-685-7420
      jswidler@swartz-legal.com
 6 -- Counsel for Plaintiffs
 7
 8
 9
10    COOPER LEVENSON APRIL NIEDELMAN &
      WAGENHEIM, P.A.
11    BY:  RUSSELL LICHTENSTEIN, ESQUIRE
      1125 Atlantic Avenue - Third Floor
12    Atlantic City, New Jersey  98401
      609-344-3161
13    rlichtenstein@cooperlevenson.com
   -- Counsel for Defendants
14
15
16
17
18
19
20
21
22
23
24
```

## Page 3

```
 1                    I N D E X
 2
 3 WITNESS                              PAGE
 4 ANTHONY COLASURDO
 5    By Mr. Swartz                        4
 6
 7
 8
 9
10
11
12              E X H I B I T S
13 EXHIBIT NO.    DESCRIPTION          MARKED
14 P-1      Notice of deposition          5
15 P-2      Interrogatories               7
16 P-3      Answers to Interrogatories    7
17
18
19
20
21
22
23
24
```

## Page 4

```
 1              (It is stipulated and
 2    agreed by and between counsel for the
 3    respective parties that the reading,
 4    signing, sealing, certification and
 5    filing of the within deposition be
 6    waived; and that all objections, except
 7    as to the form of the question, be
 8    reserved until the time of trial.)
 9              ANTHONY COLASURDO, after
10    having been first duly sworn, was
11    examined and testified as follows:
12              -----
13              EXAMINATION
14              -----
15 BY MR. SWARTZ:
16    Q.    Good afternoon.  Could you please state
17 your name for the record?
18    A.    Anthony Colasurdo.
19    Q.    If I call you Anthony today is that
20 okay?
21    A.    Absolutely.
22    Q.    My name is Richard Swartz, please feel
23 free to call me Richard, and I am an attorney
24 where we are at today, Swartz Swidler, and my
```

**5**

1 firm represents a number of individuals I think
2 we can all agree are called throwers in a case
3 against South Jersey Sanitation Company, Inc.,
4 I believe yourself as well, for allegations of
5 wage and hour violations, both federal wage and
6 hour and state wage and hour violations.  Were
7 you aware of that?
8 A.    Yes.
9 Q.    I don't anticipate the questioning
10 today to take very long, but let me just go
11 over a minute or so of ground rules.  First of
12 all, this is a deposition, which means that I
13 am asking you questions.  All that is expected
14 of you by myself, an attorney of the court, is
15 that you answer to the best of your knowledge,
16 best of your ability and answer truthfully.  Do
17 you understand that?
18 A.    Yes, I do.
19 Q.    You understand that you are here today
20 in response to what is called a 30(b)(6)
21 notice.  Do you understand that?
22 A.    Yes.
23      (Whereupon notice of deposition was
24      marked for identification as P-1.)

**6**

1 BY MR. SWARTZ:
2 Q.    You have in front of you what has been
3 marked as P-1, is what is called a notice of
4 30(b)(6) deposition.  Have you seen this
5 document before?
6 A.    I don't think so.
7 Q.    Do you understand that a 30(b)(6)
8 deposition is a deposition in which your
9 answers are being taken as to you on behalf of
10 the company?
11 A.    Yes.
12 Q.    Do you work for South Jersey
13 Sanitation?
14 A.    Yes.
15 Q.    What is your position?
16 A.    President.
17 Q.    Are you also an owner?
18 A.    Yes.
19 Q.    Are you the sole owner or are there
20 other owners?
21 A.    Sole owner.
22 Q.    Have you been deposed before?
23 A.    Yes.
24 Q.    So I will really narrow my

**7**

1 instructions.  You understand that if you don't
2 understand a question you have to let me know
3 so I can rephrase it, otherwise we will
4 understand that you understood the question.
5 A.    I understand.
6 Q.    If you look to the second, I'm sorry,
7 the last page of the 30(b)(6) deposition notice
8 that is in front of you, the last paragraph
9 says that the designee, and you are the
10 designee, should bring all documents necessary
11 to answer the questions about the above topics,
12 and the topics are listed above.  Did you bring
13 any documents with you today that would help
14 you answer any questions?
15 A.    I do not.
16      MR. LICHTENSTEIN:  We already
17      supplied the documents necessary to
18      answer the questions.
19      MR. SWARTZ:  Can you mark this as
20      P-2 and P-3?
21      (Whereupon interrogatories and
22      answers to interrogatories were marked
23      for identification as P-2 and P-3.)
24 BY MR. SWARTZ:

**8**

1 Q.    During the course of this litigation my
2 firm issued through your attorney to the
3 defendant a document which is called
4 interrogatories, which is basically questions,
5 and I am going to show you what I will
6 represent is a copy of the interrogatories that
7 my firm issued to the defendants in this case.
8 And this had been marked as P-2, if you could
9 look at the whole document, I am skipping to
10 the interrogatory section but feel free to look
11 to the beginning, first few pages if you like,
12 they are basically instructions for answering
13 interrogatories.
14 A.    Okay.
15 Q.    Have you seen those before?
16 A.    Yes.
17 Q.    Marked as P-3 is a copy of what is
18 titled defendants answers to plaintiffs'
19 interrogatories, and this I will represent to
20 you is produced by your counsel, Mr.
21 Lichtenstein, who is here, and I am going to
22 hand this to you and ask you to kind of look
23 through that for a second.
24 A.    Yes.

9

1    Q.    Have you seen these answers before?
2    A.    Yes.  If I may add, though, it was a
3    little over a year ago so I apologize it is not
4    necessarily fresh.
5    Q.    Absolutely.  If you look at, it looks
6    like page 3 of defendant's answers to
7    plaintiff's initial interrogatories, there is a
8    certification.  Is that your signature on that
9    certification on page 3 of Exhibit P-3?
10   A.    Yes, it is.
11   Q.    On page 4 of Exhibit P-3 there is what
12   is called an interrogatory certification, and
13   is that your signature on page 4 of Exhibit
14   P-3?
15   A.    Yes, it is.
16   Q.    With respect to the actual answers to
17   interrogatories that is all contained on page 2
18   and solely page 2 of Exhibit P-3; is that
19   correct?
20   A.    Say that again, please.
21   Q.    The actual answers to the
22   interrogatories, to plaintiff's
23   interrogatories, the answers themselves are
24   contained on page 2 and only page 2 of Exhibit

10

1    P-3, correct?
2    A.    Yes, sir.
3    Q.    If you turn to P-2, if you turn to the
4    second to the last page of P-2, you will see
5    the interrogatories, do you see that?
6    A.    Yes.
7    Q.    I am just going to ask you just to
8    confirm one or two things in here so you can
9    look at them side by side.  You see how, let's
10   put for the sake of ease of the transcript,
11   let's put the interrogatories on the left and
12   the answers on the right, can you do that?
13   A.    What are the answers, here, P-3?
14   Q.    Yes, P-3, page 2.
15        MR. LICHTENSTEIN:  Got your glasses
16     on?
17        THE WITNESS:  I do.  I am glad I
18     brought them.
19   BY MR. SWARTZ:
20   Q.    Now, I just want to confirm that this
21   is still accurate because like you said you
22   signed this a year ago, a little over a year
23   ago.  It looks like you verified your answers
24   on September 6, 2011, is that your handwriting,

11

1    the date on page --
2    A.    Which document are we looking at?
3    Q.    I am looking at your certification to
4    the interrogatories.
5    A.    That would be P-2, P-3?
6    Q.    P-3, yes.  Is that your handwriting?
7        MR. LICHTENSTEIN:  There are two
8      certifications.
9        THE WITNESS:  This one here?
10       MR. LICHTENSTEIN:  NO, this one is
11     the certification for the
12     interrogatories.
13   BY MR. SWARTZ:
14   Q.    Is that the date you would have signed
15   the interrogatories?
16   A.    Yes.
17   Q.    So it has been a year and a couple of
18   months.  So I just want to make sure, I am not
19   asking you to use your memory, that is why I am
20   putting this in front of you.
21        My first question to you is,
22   interrogatory number 1 E asks you to describe
23   the method or system that the defendant uses or
24   used to track the number of hours the

12

1    individual has worked for defendant during each
2    and every work week that the individual has
3    performed any service for defendant or admit
4    that no such method or system was implemented.
5    Just for the record, we were talking as it was
6    defined earlier we were talking about throwers,
7    correct, people that collect trash and haul
8    trash; is that correct?
9    A.    Yes, we are talking about throwers.
10   Q.    I think that was a term you used in
11   your answers to interrogatories, you defined
12   them as throwers.  Your answer to interrogatory
13   number 1 E says see response to "D" above.  And
14   then it continues, South Jersey Sanitation does
15   not keep records of the specific hours actually
16   worked by employees in the thrower
17   classification.  Do you see that?
18   A.    Yes, I do.
19   Q.    First of all, I assume that was
20   accurate at the time you signed this, correct?
21   A.    Yes.
22   Q.    Is that still accurate today?
23   A.    It is, and there is a reason for that.
24   Q.    Okay.

**13**

1    A.    We were involved in litigation with a
2  union, and I was, if I say this word right,
3  precluded, I was not allowed to change the
4  method which I paid my employees due to the
5  union rules or the rules when you are under a
6  petition.  Subsequent to that the union just
7  recently had a withdrawal and now we, you know,
8  we are formulating under guidance of counsel
9  what we may do with this.
10      And to further the answer, the method
11  by which we pay the employees is in my
12  estimation fair as to -- they won't make any
13  money if we pay them a straight hourly wage at
14  minimum wage due to seasonality, they are not
15  getting enough hours.  If they only work a day
16  or two they are not over 40 hours, so they make
17  a $56 pay check or so, that is not enough to
18  provide a living wage.
19      So we do this in such a manner that we
20  can make sure they have a living wage
21  throughout the year and also that -- pardon me,
22  I lost my train of thought.
23      MR. LICHTENSTEIN:  I think you
24    answered the question though, and off

**14**

1    the record.
2      (Whereupon a discussion was held
3    off the record.)
4      THE WITNESS:  The vast majority of
5    my employees knowing what this lawsuit
6    is, and they may have to go to straight
7    hourly wage are completely against it.
8    They have come to me en masse and they
9    want the hourly wage because in their
10    belief they won't make as much money as
11    they do under my system.
12  BY MR. SWARTZ:
13  Q.    Do you think in some weeks they might
14  make more?
15  A.    No.
16  Q.    Not even on an hourly basis?
17  A.    No.
18  Q.    Explain your system then for
19  compensating these throwers we are talking
20  about.  Why don't you just for the record
21  describe what a thrower is?  You sort of
22  defined it in your answers to interrogatories,
23  but for the record, for this transcript what is
24  a thrower?

**15**

1    A.    They are the gentlemen or ladies as the
2  case may be that work on the back of the
3  garbage truck, and they pick up the trash can
4  from the curb and they deposit the contents of
5  the container into the back of the truck.  Or
6  in many cases they throw it into the back of
7  the truck and hence the term thrower.
8      I've contacted wage and hour one time
9  to ask them if I could pay day rate and I was
10  advised that I could.  And I calculated that
11  minimum wage and an incentive base allowing for
12  a couple hours of overtime a day, over 40, but
13  I still compensate the guy.  If you work one
14  day I still pay you a full day rate, which is
15  more than I should, but I still do it just
16  because I think it is fair.
17      If I put you on a route that is a short
18  route, that is not your fault I put you on a
19  short route, but you are entitled to make money
20  so you come to work for me and so you can also
21  feed your family.
22      So I calculated this rate that would
23  factor in a certain amount of overtime hours in
24  the event they work them, and they don't work

**16**

1  them and they still get paid whether they work
2  them or not, in which case to me it is an
3  incentive for them to work quicker, get done
4  work in an efficient manner, if that is the
5  right word I want to use.
6  Q.    So this day rate, you are saying that
7  it is not just a daily rate but it is a day
8  rate that in a sense compensates them for a
9  certain number of straight time hours plus, did
10  you say two hours of overtime or did you not
11  say, I may be remembering from your answers to
12  interrogatories?
13  A.    If you were to work an entire week,
14  whether you work those two hours or not,
15  whatever those hours are and it puts you over
16  40 hours you are entitled to X number of
17  dollars.
18  Q.    I'm sorry, I apologize, you are
19  entitled to what, under your policy, your daily
20  rate, what do you mean you are entitled to?
21  A.    I feel you come to work and if you
22  don't work 40 hours you are not entitled
23  overtime, but if you still come to work that is
24  two or three days a week that you chose to come

17

1 in you still need to make a certain, in my
2 estimation you still need to make a certain
3 number of dollars that you can take care of
4 your family and do whatever you need to do.
5        So you are entitled to that complete
6 day rate whether you do work overtime or not.
7 Q.   So a thrower who works 10 hour days
8 five days a week, they work 50 hours, you pay
9 them their daily rate the same as if that
10 thrower worked eight hour days five days a
11 week, 40 hours or if the person works seven
12 hour days five days a week, 35 hours; is that
13 right?
14        MR. LICHTENSTEIN: I am going to
15     object the form of the question.
16        MR. SWARTZ: Maybe it is a little
17     confusing.
18 BY MR. SWARTZ:
19 Q.   What is a typical day rate, what is a
20 starting day rate?
21 A.   90 to $100 a day. I mean, it has
22 changed, it has evolved over the years, and
23 again I was because of the NLRB issue I
24 couldn't do anything different than what I did

18

1 prior to the case with the union being raised,
2 so let's just deal with most guys make $100 a
3 day.
4 Q.   I will use that number in a second, but
5 you mentioned the NLRB again. Did the throwers
6 petition to be unionized or was it just the
7 drivers?
8 A.   The throwers petitioned but the
9 throwers were going to be a part of it. The
10 throwers were given union cards to sign if they
11 so chose.
12 Q.   Did they sign the cards?
13 A.   I don't know who signed cards and who
14 didn't.
15 Q.   So it is your understanding --
16 A.   I am not privy to that information.
17 Q.   It is your understanding that the
18 throwers would have been included in the
19 collective bargaining agreement with the
20 drivers?
21 A.   They would have been, yes.
22 Q.   So using $100 a day as a daily rate,
23 would that be in the high end for your
24 throwers?

19

1 A.   That is where most guys are. Some guys
2 make a little more.
3 Q.   Does anybody make $80 a day?
4 A.   No.
5 Q.   How about 85?
6 A.   I don't think so. And, again, a brand
7 new guy may, he wouldn't work a full week
8 because he is brand new.
9 Q.   People who work full weeks would be
10 making 90 to 100?
11 A.   Yes, and more to the 100 and some make
12 105, some make 110.
13 Q.   So for ease of math we use a hundred?
14 A.   That is a fair median.
15 Q.   And a full week is five days a week or
16 six days a week, what is a typical full week?
17 A.   A full week is five days. Some guys
18 can work six days if they want. There is some
19 Saturday work and some guys want it because
20 they want to make that extra money.
21 Q.   Just so I understand --
22 A.   It is also not a full day, Saturday is
23 very short, most guys, it is over by like 12
24 o'clock, 1 o'clock.

20

1 Q.   The day starts approximately 4:30 a.m.?
2 A.   No, they don't start until about 6 or
3 6:30.
4 Q.   Who is they, the throwers?
5 A.   The throwers, that is who we are
6 talking about.
7 Q.   When do the trucks leave?
8 A.   The drivers come in at 5 a.m. and they
9 leave anywhere between -- they normally leave
10 about 5:30 by the time they check in, inspect
11 the vehicle, do the stuff they need to do by
12 New Jersey DOT requirements, and then they will
13 go and pick up their throwers.
14        We provide a gratuitous ride to the job
15 site for the throwers. Most of them do not
16 have transportation so we pick them up, in many
17 cases we pick them up right where they need to
18 work. We go to their homes to pick them up and
19 bring them home at the end of the day. We
20 provide transportation to and from the job
21 site.
22 Q.   Where is your location where the trucks
23 are in the morning?
24 A.   Hammonton.

21

1  Q.    That is where the drivers report, five
2  or so every morning?
3  A.    Yes, sir.
4  Q.    The drivers leave around 5:30?
5  A.    Yes, sir.
6  Q.    From the Hammonton headquarters, and I
7  call it headquarters?
8  A.    For lack of a better word.
9  Q.    Is there another location that the
10 company has?
11 A.    No.
12 Q.    Do any throwers show up at Hammonton
13 headquarters or the Hammonton location?
14 A.    Some do.
15 Q.    And then leave with the drivers at
16 5:30?
17 A.    Yes, if that is what they choose to do,
18 yeah.
19 Q.    Approximately when do the drivers
20 return?
21 A.    It would depend on the route.
22 Sometimes it is 2 in the afternoon, sometimes
23 it is 5 in the afternoon.  For the most part
24 they are home by 5.  Again, if a truck breaks

22

1  down, you know, they could be a little later
2  depending upon the break down, how long it
3  takes to get the truck fixed.
4  Q.    For the drivers you do keep track of
5  their hours, correct?
6  A.    Yes, sir.
7  Q.    They clock in and clock out, the
8  drivers?
9  A.    Yes, they do.  And one of the reasons
10 that throwers don't is because they don't come
11 to the yard for the most part, they are not
12 there to clock in and out.
13 Q.    If a thrower works, who is making $100
14 a day, they work five days they get 500 bucks,
15 correct?
16 A.    Yes.
17 Q.    And if they work a sixth day, they come
18 in on Saturday, they make another $100 or $600;
19 is that correct?
20 A.    Yes.
21 Q.    I don't want to put words in your
22 mouth, I want to make sure I understood your
23 answers to interrogatories.  Can you please
24 look at interrogatory number 1 D, which should

23

1  be on your left, and then your answer to
2  interrogatory 1 D, which would be on your
3  right, on the left again is P-2 and the right
4  is P-3, just for the record.
5  A.    That was 1 D?
6  Q.    1 D as in David.  That says describe
7  the basis in which defendant compensated the
8  individual, again we are talking about
9  throwers, and if on an hourly basis set forth
10 the hourly rate; if on a daily basis set forth
11 the daily rate, et cetera, and if the basis
12 changed at any time during the relevant period
13 set forth when and how it changed.
14       And your answer says, all individuals
15 in the "throwers" job classification are
16 compensated on a daily rate basis.  The daily
17 rate is based upon a formula which assumes that
18 throwers may work up to 10 hours per day.  This
19 formula is calculated using the then in effect
20 minimum wage and upon the assumption that the
21 employee will be paid for eight hours at the
22 regular time (minimum wage) and two hours at an
23 overtime rate, (1.5 times the minimum wage)
24 together with a daily incentive amount.

24

1  Employees in the thrower job classification are
2  paid the full day rate regardless of how many
3  hours they work.  For example, if a thrower
4  completes his route in five hours he is still
5  paid the full daily rate.
6        I assume this was accurate at the time
7  you completed these interrogatories back in
8  September 2011?
9  A.    Yes.
10 Q.    Is this still accurate as of today,
11 November 9, 2012?
12 A.    I do believe I answered that question
13 already, but I will answer it again, yes.
14 Q.    I'm sorry, I know you said that you
15 didn't want to change anything, I want to make
16 sure it was still accurate today?
17 A.    Again --
18       MR. LICHTENSTEIN:  You answered the
19       question.  Next question.
20 BY MR. SWARTZ:
21 Q.    So in a sense, someone who makes a
22 hundred dollars a day rate you are paying them
23 eight hours a day minimum wage or eight times
24 7.25, which I will represent to you is $290 if

25

1   it is five days, $290 a week, plus another, you
2   are assuming, you want to make sure they get
3   paid overtime, so you are paying them in a
4   sense ahead two hours a day or during the
5   course of a five day week, 10 hours of overtime
6   at time and a half minimum wage?
7   A.      I was advised by my accountant that I
8   am allowed to pay as much over as I like.  If I
9   want to compensate you more than what you have
10  coming I am allowed to do that as long as I
11  don't -- as long as I make sure you get the
12  minimum amount you are suppose to get.
13      So whatever we choose to call it,
14  whether it is overtime on a single day or two
15  hours we choose to call it incentive if you
16  don't work a full week to put you over 40, I am
17  certainly in my right to do that, and I am not
18  getting any complaint from my throwers because
19  they are quite happy they are getting paid more
20  than a minimum wage for X number of hours.
21  Q.      If a thrower works five days, five 10
22  hour days you are paying him -- 50 hours of
23  work you are paying him for 40 hours of minimum
24  wage, 10 hours at time and a half minimum wage

26

1   plus whatever the differential is between
2   whatever those two numbers add up to, and I
3   will represent they add to just under $400 a
4   week.  If they are making $100 a day you are,
5   in fact, paying them $500 a week?
6   A.      Right.  At that point it is an
7   incentive to them because I want the throwers
8   to -- first of all, they need to make a decent
9   wage, it is an unskilled job, but it still is a
10  necessary job, and I need them to come in the
11  community they work for, need them to do the
12  job, but also in my estimation I need to make
13  sure they walk out of my place with money they
14  can live on.
15      That is how we calculated this whole
16  thing.  Rephrase, that is how I calculated the
17  whole thing.  I do have a bad habit of talking
18  about myself in the third person sometimes.
19  Q.      Is that what you mean by the daily
20  incentive amount in your answer to
21  interrogatory number 1 D; in other words, the
22  daily incentive amount is the difference
23  between minimum wage for 40 hours, let's say a
24  the work week of 50 hours, minimum wage for 40

27

1   hours, 10 hours of time and a half minimum wage
2   and then whatever that difference is between
3   what they actually get is the incentive?
4   A.      What I call incentive.  I have to call
5   it something.  And, again, for the guy and
6   there are many of them that don't work a full
7   week, that don't work five days that work three
8   days and are not over 40 hours, but you still
9   require people to come to work those days, and
10  there are people that only want to work three
11  days, I do not understand that, but that is
12  what they want to do, and we still need them.
13      So for me I want to make sure they come
14  to work so I pay them more than what they would
15  be required to get under federal guidelines of
16  minimum wage, but I still need them to come in,
17  and I am happy with it and they are happy with
18  it.
19  Q.      Scheduling, who does the scheduling at
20  South Jersey Sanitation?
21  A.      I do along with a supervisor of mine
22  named Edwin Morales.
23  Q.      Do the thrower's schedule change week
24  to week or is it pretty constant?

28

1   A.      It is a very transient work force.  I
2   am really never sure until the drivers tell me
3   who they picked up who is working that day or
4   not.  We have a schedule based upon what we
5   think or who we think is going to come in and
6   go to work that day, but it is a work in
7   progress.
8   Q.      There are certain employees in this
9   lawsuit have been with you for years?
10  A.      Some.
11  Q.      How do they know what schedule they are
12  working?
13  A.      For the most part they are on the
14  schedule where they have been, especially
15  certain guys who have been with me for a long
16  time they know where they are going to go
17  because that is their route.
18      What will happen is when routes will
19  change if we show up and no one is at a site
20  where we thought they were going to be, we will
21  drive people out there.
22      We have a lot of people who come in
23  knowing they are not necessarily going to work,
24  they are there to fill in.  If there is someone

R&K Reporting Inc.

29

1   that is missing and there is an open spot the
2   guys will take that day.
3   Q.      These schedules, are they computer
4   based or on paper?
5   A.      They are on paper.
6   Q.      This is done every week?
7   A.      Every evening.
8   Q.      Is it for a week at a time or just the
9   next day at a time?
10  A.      We live one day at a time.
11  Q.      Does the schedules have the name of the
12  thrower on it and on what truck they are
13  driving?
14  A.      Yes.
15  Q.      So would it list a thrower's name and a
16  truck number or would it list like the
17  thrower's name and the driver number?
18  A.      It would list the job where they are
19  suppose to work, the driver who is going to be
20  their driver, the truck number and the
21  throwers' names underneath that?
22  Q.      Throwers you said plural so there are
23  two throwers on each truck?
24  A.      It depends. Sometimes they are,

30

1   sometimes they are not.
2   Q.      It is never three, it is one or two,
3   correct?
4   A.      Correct.
5   Q.      Are these schedules posted at
6   headquarters?
7   A.      The schedules are posted for the
8   drivers so they know who they are picking up.
9   The throwers know where they are going based
10  upon the routes they have been on, and let's
11  just say thrower A, he has been with me for a
12  couple of years, his route is his route.
13       He knows where he is going to go and he
14  knows what truck he is going to pick up for the
15  most part and who the driver is because it is
16  the driver's route provided the driver comes
17  in.
18       If the driver doesn't come in then we
19  have to send somebody else, and again the
20  throwers are normally picked up at his house
21  and he knows where he is going to go.
22  Q.      Do you do these schedules by hand or do
23  you do it on a computer?
24  A.      Well, they are on paper, but it is in,

31

1   we do it via computer so when we have to make
2   changes. The schedule is made the night
3   before. When the next day certain throwers or
4   drivers don't come in it is just easier to make
5   those changes on the schedule so we can work
6   off of that to do payroll and know who is
7   where.
8        When we get complaints from the
9   municipalities we service we need to know who
10  we have to contact, who the driver is, what
11  truck it is, and that schedule now winds up
12  getting fixed in the morning, now it is 100
13  percent accurate to really drivers and where
14  they are so you can contact the right driver
15  and say, you know, you missed Mrs. Brown on
16  13th Street, please go back and pick up her
17  trash or recycling.
18  Q.      So it is basically in some kind of
19  computer software program, the schedules, and
20  you kind of edit it each day?
21  A.      It is in an Excel program. It is
22  nothing that fancy that it is a software
23  program.
24  Q.      You type in the names and you print it

32

1   out or do you hand write in the names?
2   A.      No, they are typed in.
3   Q.      Each day do you do a new schedule and
4   you keep both schedules in case you need to
5   look at them?
6   A.      You would go back to the previous
7   week's schedule. Today is Monday, no, I am
8   sorry, today is Friday, when we made the
9   schedule for today last evening we would look
10  back and see what we did last Friday and
11  because, you know, the drivers are in the same
12  place for the most part, the thrower, that
13  thrower A I referred to earlier, he is in the
14  same place so they know where they are.
15  Q.      So where would you find last week's
16  schedule?
17  A.      It would just be posted under Friday.
18  Q.      So saved, each day's schedule is saved
19  on a hard drive somewhere?
20  A.      Yes. It is only saved for a week
21  because it will change. Today we would change
22  the Friday schedule upon who came in today as
23  to accuracy so we could pay the throwers off of
24  that. So last week's schedule Friday is now

## Page 33

37

```
 1    Q.    Who is your accountant?
 2    A.    Richard Malecish. That is
 3  M-A-L-E-C-I-S-H.
 4    Q.    Was it made from his office line?
 5    A.    Yes, and I believe I made the call.
 6    Q.    By the way, just so I understand the
 7  business, when the trucks return to Hamilton --
 8  Hammonton, sorry, Hammonton, that is down South
 9  Jersey, further south, Hammonton, versus
10  Hamilton?
11    A.    Well, there are two Hamiltons, one is
12  in Trenton and one is in Mays Landing, but
13  Hammonton is Exhibit 28 on the Atlantic City
14  Expressway for clarity sake.
15    Q.    When the trucks return do they return
16  with the garbage or do they go dump the garbage
17  somewhere first?
18    A.    That would depend. If the truck is
19  full they would go dump first, the thrower's
20  day is done.
21    Q.    So is the thrower's day done before or
22  after the truck dumps?
23    A.    The throwers day is done when the last
24  bag is put in the truck. The thrower may do
```

38

```
 1  whatever he wants, in many cases they will take
 2  a bus home because they don't want to wait or
 3  in some cases we will drive them home after we
 4  dump the truck.
 5       If the truck is only partially loaded
 6  but going back to the same municipality the
 7  next day they may come right back to Hammonton
 8  and not go to the dump.
 9    Q.    If a thrower returns to Hammonton with
10  the truck that occurs I assume; is that
11  correct?
12    A.    Sometimes not all throwers return to
13  Hammonton. Some throwers, I work in Vineland,
14  some throwers we pick them up in Vineland so
15  they don't come to Hammonton, they never come
16  to Hammonton, they get picked up in Vineland.
17  They go to work and they get dropped off at
18  home in Vineland.
19    Q.    If they are on a truck that has to do
20  the drop off in the dumping area, where is the
21  area where the truck actually dumps the trash
22  once it is full, what do you call that?
23    A.    I am not sure I understand that.
24    Q.    A truck is full, end of the day a truck
```

39

```
 1  is full, you dump the trash somewhere, correct,
 2  you empty the truck?
 3    A.    Yes.
 4    Q.    Where does the truck get emptied?
 5    A.    It depends on where the trash is picked
 6  up from, there are many dump sites.
 7    Q.    Give me the dump sites?
 8    A.    We are currently in Cherry Hill, I
 9  would dump at the Camden incinerator on Morgan
10  Boulevard off of 676, that is the designated
11  site for Camden County municipal trash. If I
12  pick up in Cumberland County, the City of
13  Vineland, the designated site is the Cumberland
14  County Improvement Authority right outside of
15  Vineland. Each county has its own disposal
16  site.
17    Q.    So how many different counties are you
18  in?
19    A.    Clarify, just municipal where there
20  would be throwers involved?
21    Q.    Yeah.
22    A.    Okay. Four.
23    Q.    Are there counties that you are in, I
24  think there was confusion before, and I think
```

40

```
 1  you answered or addressed this issue before but
 2  let me just clarify. You don't have any
 3  employees in Pennsylvania; is that correct?
 4    A.    That is correct.
 5    Q.    Do you perform any services in
 6  Pennsylvania?
 7    A.    I do not.
 8    Q.    Your trucks don't go to Pennsylvania?
 9    A.    I am a Jersey boy, my friend.
10    Q.    Trucks stay here?
11    A.    Yes, sir.
12    Q.    How about New York, I didn't ask about
13  that, but do you have employees in New York?
14    A.    No.
15    Q.    Do your trucks ever go to New York?
16    A.    I would be terrified to go to New York.
17       MR. LICHTENSTEIN: That is a no,
18  right?
19       THE WITNESS: That is a no.
20  BY MR. SWARTZ:
21    Q.    Other than Jersey, do your trucks go
22  anywhere else?
23    A.    No.
24    Q.    I would like to take a two minute
```

41

1    break, I may be done.
2         (Whereupon a short recess was
3         taken.)
4    BY MR. SWARTZ:
5    Q.    How do you know how many days to pay
6    each thrower each week?
7    A.    That would be based off the schedule.
8    Q.    What if there is a thrower, I assume
9    throwers are no shows just like drivers are
10   sometimes no shows, throwers are sometimes no
11   shows?
12   A.    Yes.
13   Q.    Is it the secondary sheet or the second
14   sheet, you say you kind of compare that to the
15   schedule to figure out how many days to pay a
16   thrower?
17   A.    Well, we would adjust the schedule.
18   Driver A goes to thrower's house, some of these
19   guys live together or very near each other and
20   the guy that is suppose to be there says he is
21   not going, but my friend will go, and they go,
22   and we adjust the schedule so we know, and the
23   friend normally has worked for us before or his
24   cousin, you know, and then we would make the

42

1    change on the schedule and at the end of the
2    day it is noted that he worked.
3    Q.    So the printed schedule, you have like
4    a cross out and you put somebody else's name if
5    somebody didn't show up?
6    A.    Yeah, then it gets fixed.  We put it in
7    the computer and the Excel can print it so it
8    looks nice so when we try to pay off of the
9    sheet that -- we really don't want to skip
10   anybody because that, you know, if you work
11   your day, you work your three days if you get
12   shorted a day come pay day you are not happy,
13   and it drives me crazy, Richard, if we make a
14   mistake and not pay somebody and miss a day
15   because you are counting on that money as an
16   employee, and I just don't understand why that
17   mistake should ever be made.
18   Q.    These schedules, and I think you called
19   it the second sheets, did the second sheets,
20   you mention you use that for the drivers if
21   someone doesn't show, do you also use that for
22   the throwers?  I guess I am a little confused
23   if the second sheets relate to throwers as well
24   or it just relates to drivers?

43

1    A.    The second sheet was created by me so I
2    didn't get the 5 o'clock phone call with having
3    to make mundane decisions as to what to do.  I
4    wanted to make it where it was very clear the
5    options that we would have on a given day of
6    the week.
7    Q.    When you say 5 o'clock, you mean 5:00
8    a.m. phone call?
9    A.    My supervisor --
10   Q.    5:00 a.m.?
11   A.    Yeah, my supervisor would be starting
12   to count heads and see what drivers would come
13   in and by 5:30 or 6 o'clock, you give guys time
14   to come in, drivers time to show up, flat tire,
15   traffic or whatever, and then when you start to
16   realize or you get the phone call, ideally you
17   would get a phone call saying they are not
18   coming in because something happened, and there
19   would be a check down list of things to do as I
20   described before.  If one guy doesn't come in
21   we would do A, if the second guy doesn't come
22   in we would do B, and there would be a list so
23   my people would know what moves to make as far
24   as drivers.  For instance, if Justin didn't

44

1    come in today you handled his deposition, check
2    down.
3    Q.    Okay.  That is a DOT checklist I think
4    you mentioned?
5    A.    No, that is that second sheet.
6    Q.    Right.
7    A.    If you didn't come in today the young
8    lady to your right would handle the deposition,
9    that would be the second person who didn't come
10   in.  I am trying to put this in terms that I
11   think you will understand because I think you
12   are struggling with this.
13   Q.    The schedules that you have a year,
14   maybe two years, maybe more of, the hard copies
15   of, okay?
16   A.    Yes.
17   Q.    Where are those schedules kept?
18   A.    They would be at my office.
19       MR. SWARTZ:  Russell, I will send
20   you a request in writing, but we will
21   request copies of the schedules as well
22   as the second sheets.
23       MR. LICHTENSTEIN:  Okay, send me
24   something in writing.

**45**

BY MR. SWARTZ:

Q.   What percentage of your throwers show up at Hammonton in the morning?

A.   I really couldn't put a number on that. I would just say, if I have to put a number, I would say about 25 percent.

Q.   How many throwers go out a day, approximately, in a work day, Monday through Friday, not a Saturday?

A.   I understand. About 40.

Q.   About 40 throwers?

A.   Uh-huh.

Q.   So about 10 or so show up at Hammonton?

A.   I would say that, yeah.

Q.   And about how many get dropped off at Hammonton at the end of the day, about 10?

A.   No, well, it depends. Some get picked up at Hammonton so they still would get dropped off at Hammonton, at their home, not my yard.

Q.   So those that get picked up at Hammonton would get dropped off in Hammonton but not necessarily at your yard?

A.   The guys who chose to come to the yard would get dropped off at the yard. The guys

**46**

who we picked up at their home in Hammonton would get dropped off at their home should they choose.

Many times if they are going by a Walmart they want to get dropped off, they go by a restaurant, they want to get dropped off, they want to get dropped off in the center of town, we do what they ask. If you get picked up in Vineland you get dropped off in Vineland.

Q.   If a thrower shows up at Hammonton is it your position that he is not really working until he actually shows up to pick up the first piece of trash? I am not sure if that is your position or not.

A.   That is my position. We are providing transportation to their job site. They are on the truck, they are sleeping in most regards until they get to where they are going to work.

Q.   So they are inside the truck?

A.   They are inside the truck. I wouldn't let them be outside, that would be dangerous.

Q.   They drive outside of the truck all the time to pick up the trash?

A.   Only going from point A to point B at

**47**

five miles an hour, not going 60 miles an hour down the road.

Q.   These trucks, it is mostly residential; is that correct?

A.   Any truck that has a thrower on it is residential.

Q.   So your position if the first pick up is 798 street XYZ in town anywhere, that the throwers work doesn't begin until he arrives at that location and gets off the truck to pick up the first piece of trash; is that correct?

A.   That is correct.

Q.   If the last piece of trash hauled by the thrower is another location in town anywhere, a resident's home, that once he finishes that last piece of trash the thrower is done?

A.   His work day is complete, yes, sir.

Q.   The typical truck, how big of a location does it cover in a day; in other words, is it a block, is it a town, is it a couple towns?

A.   It depends upon the size of the demographics of the individual town. All towns

**48**

are different.

Q.   So because you consider the work day to start and end where the first pick up of trash, is that why you don't keep track of the hours they work or at least is that why you initially not began keeping track of the hours they worked?

A.   I think I answered this earlier. Since they don't come to the yard there is no way to punch them in and out, they are not there. So that is why we do it the way we do it.

Q.   The yard is in Hammonton and do you actually pick up trash in Hammonton?

A.   Residentially?

Q.   Yeah.

A.   No.

Q.   What are, just very briefly, the surrounding counties that you pick up trash in the surrounding Hammonton?

MR. LICHTENSTEIN: Hammonton is not a county.

BY MR. SWARTZ:

Q.   What county is Hammonton in?

A.   Atlantic.



49

1  Q.     Do you pick up any trash in Atlantic
2  County?
3  A.     Residentially?
4  Q.     Yes.
5  A.     No.
6  Q.     What is the nearest county in which you
7  pick up trash?
8  A.     Camden, Burlington, Cumberland.
9  Q.     The distance between Hammonton and
10  those locations, approximately?
11  A.     Camden County is a big county, Richard.
12  Q.     So you pick it up throughout Camden
13  County?
14  A.     Different municipalities in Camden
15  County.
16  Q.     I have no further questions, thank you
17  for your time.
18          -----
19      (Witness excused.)
20      (Deposition concluded at 2:56 p.m.)
21
22
23
24

50

1
2          CERTIFICATION
3          I, Linda A. Ricciardi, hereby
4  certify that the foregoing is a true and
5  accurate transcript of the deposition of
6  ANTHONY COLASURDO, who was first sworn by me at
7  the time, place and on the date herein before
8  set forth.
9          I further certify that I am
10  neither attorney nor counsel for, not related
11  to or employed by any of the parties to the
12  action in which this deposition was taken;
13  further, that I am not a relative or employee
14  of any attorney or counsel employed in this
15  case, nor am I financially interested in this
16  action.
17
18
19
20
21      _____
22          Linda A. Ricciardi
23      Court Reporter and Notary Public
24

R&K Reporting Inc.

Phone: 215-946-7009          rkreporting@gmail.com

51

| A | | | | |
|---|---|---|---|---|

**A**
ability 5:16
absolutely 4:21
 9:5
accountant 25:7
 35:1,3,6 37:1
accountants
 36:24
accuracy 32:23
accurate 10:21
 12:20,22 24:6
 24:10,16 31:13
 33:14 50:5
action 1:3 50:12
 50:16
actual 9:16,21
add 9:2 26:2,3
addressed 40:1
adjust 41:17,22
admit 12:3
advised 15:10
 25:7
afternoon 4:16
 21:22,23
ago 9:3 10:22,23
 33:4 35:17
agree 5:2
agreed 4:2
agreement 18:19
ahead 25:4
alavezlopez 1:3
alejandro 1:5
allegations 5:4
allowed 13:3
 25:8,10
allowing 15:11
amount 15:23
 23:24 25:12
 26:20,22 34:14
anonymous 36:5
answer 5:15,16
 7:11,14,18
 12:12 13:10
 23:1,14 24:13
 26:20

answered 13:24
 24:12,18 40:1
 48:8
answering 8:12
answers 3:16 6:9
 7:22 8:18 9:1,6
 9:16,21,23
 10:12,13,23
 12:11 14:22
 16:11 22:23
anthony 1:10,15
 3:4 4:9,18,19
 36:8 50:6
anticipate 5:9
antonio 1:4,5,6
anybody 19:3
 42:10
apologize 9:3
 16:18 36:20
appearances 2:1
approximately
 20:1 21:19
 33:16 45:8
 49:10
april 2:10
area 38:20,21
arora 2:3
arrives 47:9
asking 5:13
 11:19 36:7
asks 11:22
assume 12:19
 24:6 38:10
 41:8
assumes 23:17
assuming 25:2
assumption
 23:20
atlantic 2:11,12
 37:13 48:24
 49:1
attorney 4:23
 5:14 8:2 50:10
 50:14
authority 39:14

avenue 2:11
aware 5:7

**B**
b 3:12 5:20 6:4,7
 7:7 43:22
 46:24
back 15:2,5,6
 24:7 31:16
 32:6,10 33:5
 33:13 38:6,7
bad 26:17
bag 37:24
bargaining
 18:19
base 15:11
based 23:17 28:4
 29:4 30:9 34:4
 41:7
basically 8:4,12
 31:18
basis 14:16 23:7
 23:9,10,11,16
began 48:6
beginning 8:11
behalf 1:6,16 6:9
belief 14:10
believe 5:4 24:12
 36:1,23 37:5
best 5:15,16
better 21:8
big 47:19 49:11
block 47:21
boulevard 39:10
box 1:23
boy 40:9
brand 19:6,8
break 22:2 41:1
breaks 21:24
briefly 48:17
bring 7:10,12
 20:19
brought 10:18
brown 31:15
bucks 22:14

burlington 49:8
bus 38:2
business 37:7

**C**
calculated 15:10
 15:22 23:19
 26:15,16
call 4:19,23 21:7
 25:13,15 27:4
 27:4 34:3
 35:15,23 36:5
 36:22,23 37:5
 38:22 43:2,8
 43:16,17
called 5:2,20 6:3
 8:3 9:12 33:22
 34:1 36:3
 42:18
camden 1:2 39:9
 39:11 49:8,11
 49:12,14
cards 18:10,12
 18:13
care 17:3
case 5:2 8:7 15:2
 16:2 18:1 32:4
 50:15
cases 15:6 20:17
 38:1,3
cdl 34:8
center 46:7
certain 15:23
 16:9 17:1,2
 28:8,15 31:3
 33:15 35:21
certainly 25:17
certification 4:4
 9:8,9,12 11:3
 11:11 50:1
certifications
 11:8
certified 1:20
certify 50:4,9
cetera 23:11

change 13:3
 24:15 27:23
 28:19 32:21,21
 42:1
changed 17:22
 23:12,13
changes 31:2,5
 34:20
check 13:17
 20:10 33:21
 43:19 44:1
checklist 44:3
cherry 1:12,18
 2:4 39:8
choices 34:11
choose 21:17
 25:13,15 46:3
chose 16:24
 18:11 45:23
city 2:12 37:13
 39:12
civil 1:3
clarify 39:19
 40:2
clarity 37:14
classification
 12:17 23:15
 24:1
clear 43:4
clock 22:7,7,12
colarsurdo 1:11
colasurdo 1:16
 3:4 4:9,18 50:6
collect 12:7
collective 18:19
com 2:5,13
come 14:8 15:20
 16:21,23,24
 20:8 22:10,17
 26:10 27:9,13
 27:16 28:5,22
 30:18 31:4
 34:6,8,10
 36:15 38:7,15
 38:15 42:12

Phone: 215-946-7009                    rkreporting@gmail.com

ANTHONY COLASURDO

43:12,14,20,21
44:1,7,9 45:23
48:9
comes 30:16
coming 25:10
34:5 43:18
commencing
1:19
community
26:11
company 5:3
6:10 21:10
compare 41:14
compensate
15:13 25:9
35:8
compensated
23:7,16
compensates
16:8
compensating
14:19
complaint 25:18
complaints 31:8
complete 17:5
47:18
completed 24:7
completely 14:7
completes 24:4
computer 29:3
30:23 31:1,19
42:7
concluded 49:20
confirm 10:8,20
confused 42:22
confusing 17:17
confusion 39:24
consider 48:2
constant 27:24
constantino 1:5
contact 31:10,14
contacted 15:8
contained 9:17
9:24
container 15:5

contents 15:4
continues 12:14
cooper 2:10
cooperlevenson
2:13
copies 33:7,8,12
44:14,21
copy 8:6,17
34:17,21
correct 9:19
10:1 12:7,8,20
22:5,15,19
30:3,4 36:18
38:11 39:1
40:3,4 47:4,11
47:12
couldnt 17:24
45:4
counsel 2:6,13
4:2 8:20 13:8
50:10,14
count 43:12
counties 39:17
39:23 48:18
counting 42:15
county 39:11,12
39:14,15 48:21
48:23 49:2,6
49:11,11,13,15
couple 11:17
15:12 30:12
47:22
course 8:1 25:5
court 1:1,20,22
5:14 50:23
cousin 41:24
cover 47:20
crazy 42:13
created 43:1
cross 42:4
cumberland
39:12,13 49:8
curb 15:4
currently 39:8

**D**

d 3:1 12:13
22:24 23:2,5,6
26:21
daily 16:7,19
17:9 18:22
23:10,11,16,16
23:24 24:5
26:19,22 35:2
dangerous 46:21
date 1:19 11:1
11:14 50:7
david 23:6
day 13:15 15:9
15:12,14,14
16:6,7 17:6,19
17:20,21 18:3
18:22 19:3,22
20:1,19 22:14
22:17 23:18
24:2,22,23
25:4,5,14 26:4
28:3,6 29:2,9
29:10 31:3,20
32:3 33:3 35:6
36:11 37:20,21
37:23 38:7,24
42:2,11,12,12
42:14 43:5
45:7,8,16
47:18,20 48:2
days 16:24 17:7
17:8,10,10,12
17:12 19:15,16
19:17,18 22:14
25:1,21,22
27:7,8,9,11
32:18 41:5,15
42:11
deal 18:2
decent 26:8
decisions 43:3
defendant 8:3
11:23 12:1,3
23:7

defendants 1:11
2:13 8:7,18 9:6
defined 12:6,11
14:22
demographics
47:24
department 35:5
36:18
depend 21:21
37:18
depending 22:2
depends 29:24
39:5 45:17
47:23
deposed 6:22
deposit 15:4
deposition 3:14
4:5 5:12,23 6:4
6:8,8 7:7 44:1
44:8 49:20
50:5,12
describe 11:22
14:21 23:6
described 43:20
description 3:13
designated
39:10,13
designee 7:9,10
developed 35:18
didnt 18:14
24:15 34:6,8
34:10 36:17
40:12 42:5
43:2,24 44:7,9
difference 26:22
27:2
different 17:24
39:17 48:1
49:14
differential 26:1
discussion 14:2
36:15
disposal 39:15
distance 49:9
district 1:1,1

document 6:5
8:3,9 11:2 33:9
documents 7:10
7:13,17
doesnt 30:18
42:21 43:20,21
47:9
doing 35:21
dollars 16:17
17:3 24:22
dont 5:9 6:6 7:1
14:20 15:24
16:22 18:13
19:6 20:2
22:10,10,21
25:11,16 27:6
27:7 31:4
33:14 38:2,15
40:2,8 42:9,16
48:4,9
dot 20:12 44:3
drive 28:21
32:19 38:3
46:22
driver 29:17,19
29:20 30:15,16
30:18 31:10,14
34:6,8,10
41:18
drivers 18:7,20
20:8 21:1,4,15
21:19 22:4,8
28:2 30:8,16
31:4,13 32:11
41:9 42:20,24
43:12,14,24
drives 42:13
driving 29:13
drop 38:20
dropped 38:17
45:15,18,21,24
46:2,5,6,7,9
due 13:4,14
duly 4:10
dump 37:16,19

ANTHONY COLASURDO

53

| | | | |
|---|---|---|---|
| 38:4,8 39:1,6,7 39:9 | evening 29:7 32:9 | firm 5:1 8:2,7 | |
| dumping 38:20 | event 15:24 | first 4:10 5:11 8:11 11:21 12:19 26:8 37:17,19 46:12 47:7,11 48:3 50:6 | **G** |
| dumps 37:22 38:21 | evolved 17:22 | | garbage 15:3 37:16,16 |
| | examination 1:15 4:13 | | gentlemen 15:1 |
| **E** | examined 4:11 | five 17:8,10,12 19:15,17 21:1 22:14 24:4 25:1,5,21,21 27:7 47:1 | getting 13:15 25:18,19 31:12 34:11 |
| e 3:1,12 11:22 12:13 | example 24:3 | | give 39:7 43:13 |
| earlier 12:6 32:13 48:8 | excel 31:21 33:9 42:7 | | given 18:10 43:5 |
| ease 10:10 19:13 | excused 49:19 | fixed 22:3 31:12 42:6 | glad 10:17 |
| easier 31:4 | exhibit 3:13 9:9 9:11,13,18,24 37:13 | flat 43:14 | glasses 10:15 |
| east 1:18 2:3 | | floor 2:11 | go 5:10 14:6 20:13,18 28:6 28:16 30:13,21 31:16 32:6 36:6 37:16,19 38:8,17 40:8 40:15,16,21 41:21,21 45:7 46:5 |
| edit 31:20 | expected 5:13 | follows 4:11 | |
| edwin 27:22 | explain 14:18 | force 28:1 | |
| effect 23:19 | expressway 37:14 | foregoing 50:4 | |
| efficient 16:4 | extra 19:20 | form 4:7 17:15 | |
| eight 17:10 23:21 24:23,23 | | formula 23:17 23:19 | |
| electronic 34:17 34:19 | **F** | formulating 13:8 | |
| elses 42:4 | fact 26:5 | forth 23:9,10,13 50:8 | goes 41:18 |
| employed 50:11 50:14 | factor 15:23 | | going 8:5,21 10:7 17:14 18:9 28:5,16 28:20,23 29:19 30:9,13,14,21 33:13 38:6 41:21 46:4,18 46:24 47:1 |
| | fair 13:12 15:16 19:14 | four 39:22 | |
| employee 23:21 35:8 42:16 50:13 | family 15:21 17:4 | free 4:23 8:10 | |
| | fancy 31:22 | fresh 9:4 | |
| employees 12:16 13:4,11 14:5 24:1 28:8 36:11 40:3,13 | far 43:23 | friday 32:8,10 32:17,22,24 45:9 | |
| | fault 15:18 | | |
| | fax 1:24 | | good 4:16 |
| employer 36:9 | federal 5:5 27:15 | friend 40:9 41:21,23 | gratuitous 20:14 |
| emptied 39:4 | feed 15:21 | front 6:2 7:8 11:20 | ground 5:11 |
| empty 39:2 | feel 4:22 8:10 16:21 | | guess 35:2 42:22 |
| en 14:8 | | full 15:14 19:7,9 19:15,16,17,22 24:2,5 25:16 27:6 37:19 38:22,24 39:1 | guidance 13:8 |
| entire 16:13 | figure 41:15 | | guidelines 27:15 |
| entitled 15:19 16:16,19,20,22 17:5 | filed 35:19 | | gutierrez 1:5 |
| | filing 4:5 | | guy 15:13 19:7 27:5 34:7 41:20 43:20,21 |
| | fill 28:24 | further 13:10 37:9 49:16 50:9,13 | |
| especially 28:14 | financially 50:15 | | guys 18:2 19:1,1 19:17,19,23 28:15 29:2 41:19 43:13 45:23,24 |
| esquire 2:2,3,11 | find 32:15 | | |
| estimation 13:12 17:2 26:12 | finishes 47:16 | | |
| et 23:11 | finite 33:15 | | |

| |
|---|
| **H** |
| h 3:12 |
| habit 26:17 |
| half 25:6,24 27:1 |
| hamilton 37:7 37:10 |
| hamiltons 37:11 |
| hammonton 20:24 21:6,12 21:13 37:8,8,9 37:13 38:7,9 38:13,15,16 45:3,13,16,18 45:19,21,21 46:1,10 48:12 48:13,19,20,23 49:9 |
| hand 8:22 30:22 32:1 |
| handle 44:8 |
| handled 44:1 |
| handwriting 10:24 11:6 |
| happen 28:18 |
| happened 43:18 |
| happy 25:19 27:17,17 42:12 |
| hard 32:19 33:7 33:8,12 34:17 34:21 44:14 |
| haul 12:7 |
| hauled 47:13 |
| headquarters 21:6,7,13 30:6 |
| heads 43:12 |
| held 14:2 |
| help 7:13 |
| hernandez 1:4 |
| high 18:23 |
| hill 1:12,18 2:4,4 39:8 |
| home 20:19 21:24 38:2,3 38:18 45:19 46:1,2 47:15 |

ANTHONY COLASURDO

54

homes 20:18
hour 5:5,6,6
    15:8 17:7,10
    17:12 25:22
    35:5,9,23 47:1
    47:1
hourly 13:13
    14:7,9,16 23:9
    23:10
hours 11:24
    12:15 13:15,16
    15:12,23 16:9
    16:10,14,15,16
    16:22 17:8,11
    17:12 22:5
    23:18,21,22
    24:3,4,23 25:4
    25:5,15,20,22
    25:23,24 26:23
    26:24 27:1,1,8
    36:14 48:4,6
house 30:20
    41:18
hundred 19:13
    24:22

**I**

ideally 43:16
identification
    5:24 7:23
identify 36:2
im 7:6 16:18
    24:14
imagine 33:21
implemented
    12:4
improvement
    39:14
incentive 15:11
    16:3 23:24
    25:15 26:7,20
    26:22 27:3,4
incinerator 39:9
included 18:18
individual 12:1

12:2 23:8
    47:24
individuals 5:1
    23:14
information
    18:16
initial 9:7
initially 48:5
inquiry 35:9
inside 46:19,20
inspect 20:10
instance 43:24
instructions 7:1
    8:12
interested 50:15
interrogatories
    3:15,16 7:21
    7:22 8:4,6,13
    8:19 9:7,17,22
    9:23 10:5,11
    11:4,12,15
    12:11 14:22
    16:12 22:23
    24:7
interrogatory
    8:10 9:12
    11:22 12:12
    22:24 23:2
    26:21
involved 13:1
    39:20
issue 17:23 40:1
issued 8:2,7
ive 15:8

**J**

javier 1:3
jersey 1:1,10,12
    1:18 2:4,12 5:3
    6:12 12:14
    20:12 27:20
    36:9 37:9 40:9
    40:21
job 20:14,20
    23:15 24:1

26:9,10,12
    29:18 46:16
jswidler 2:5
justin 43:24

**K**

k 1:22
keep 12:15 22:4
    32:4 34:13,14
    34:22,23 48:4
keeping 48:6
kept 44:17
kind 8:22 31:18
    31:20 41:14
kmw 1:8
know 7:2 13:7
    18:13 22:1
    24:14 28:11,16
    30:8,9 31:6,9
    31:15 32:11,14
    33:2,4,14 41:5
    41:22,24 42:10
    43:23
knowing 14:5
    28:23
knowledge 5:15
knows 30:13,14
    30:21

**L**

labor 35:5 36:18
lack 21:8
ladies 15:1
lady 44:8
landing 37:12
lasts 34:20
lawsuit 14:5
    28:9 35:19,20
leave 20:7,9,9
    21:4,15
left 10:11 23:1,3
letter 35:11
levenson 2:10
levittown 1:23
lichtenstein 2:11

7:16 8:21
    10:15 11:7,10
    13:23 17:14
    24:18 40:17
    44:23 48:20
linda 1:20 50:3
    50:22
line 37:4
list 29:15,16,18
    34:4 43:19,22
listed 7:12
litigation 8:1
    13:1
little 9:3 10:22
    17:16 19:2
    22:1 42:22
live 26:14 29:10
    41:19
living 13:18,20
llc 2:2
loaded 38:5
location 20:22
    21:9,13 47:10
    47:14,20
locations 49:10
long 5:10 22:2
    25:10,11 28:15
    33:16 34:23
look 7:6 8:9,10
    8:22 9:5 10:9
    22:24 32:5,9
    33:5
looking 11:2,3
    36:6
looks 9:5 10:23
    42:8
lost 13:22
lot 28:22

**M**

m 1:19 20:1,8
    43:8,10 49:20
majority 14:4
making 19:10
    22:13 26:4

malecish 37:2,3
manali 2:3
manner 13:19
    16:4
marco 1:5
mark 7:19
marked 3:13
    5:24 6:3 7:22
    8:8,17
marlton 1:17 2:3
masse 14:8
math 19:13
mays 37:12
mean 16:20
    17:21 26:19
    43:7
means 5:12
median 19:14
memory 11:19
mention 42:20
mentioned 18:5
    35:1 44:4
method 11:23
    12:4 13:4,10
miles 47:1,1
mine 27:21
minimum 13:14
    15:11 23:20,22
    23:23 24:23
    25:6,12,20,23
    25:24 26:23,24
    27:1,16
minute 5:11
    40:24
missed 31:15
missing 29:1
mistake 42:14
    42:17
monday 32:7
    45:8
money 13:13
    14:10 15:19
    19:20 26:13
    42:15
month 33:4

ANTHONY COLASURDO

55

months 11:18
morales 27:22
morgan 39:9
morning 20:23
  21:2 31:12
  45:3
mouth 22:22
move 34:12
moves 34:4
  43:23
mundane 43:3
municipal 39:11
  39:19
municipalities
  31:9 49:14
municipality
  38:6

**N**

n 3:1
name 4:17,22
  29:11,15,17
  36:21 42:4
named 27:22
names 29:21
  31:24 32:1
narrow 6:24
near 41:19
nearest 49:6
necessarily 9:4
  28:23 45:22
necessary 7:10
  7:17 26:10
need 17:1,2,4
  20:11,17 26:8
  26:10,11,12
  27:12,16 31:9
  32:4
needed 33:2
neither 36:17,19
  50:10
never 28:2 30:2
  38:15
new 1:1,12,18
  2:4,12 19:7,8

20:12 32:3
  40:12,13,15,16
nice 42:8
niedelman 2:10
night 31:2
nlh 1:8
nlrb 17:23 18:5
normally 20:9
  30:20 41:23
notary 50:23
noted 42:2
notice 3:14 5:21
  5:23 6:3 7:7
november 1:13
  24:11
number 5:1
  11:22,24 12:13
  16:9,16 17:3
  18:4 22:24
  25:20 26:21
  29:16,17,20
  34:6,8,10 45:4
  45:5
numbers 26:2

**O**

object 17:15
objections 4:6
occurs 38:10
oclock 19:24,24
  43:2,7,13
office 2:4 36:24
  37:4 44:18
offices 1:17
okay 4:20 8:14
  12:24 35:22
  39:22 44:3,15
  44:23
once 38:22 47:15
open 29:1
option 34:9
options 43:5
ortega 1:6
outside 39:14
  46:21,22

overtime 15:12
  15:23 16:10,23
  17:6 23:23
  25:3,5,14
owner 6:17,19
  6:21
owners 6:20

**P**

p 1:19 2:10
  49:20
p1 3:14 5:24 6:3
p2 3:15 7:20,23
  8:8 10:3,4 11:5
  23:3
p3 3:16 7:20,23
  8:17 9:9,11,14
  9:18 10:1,13
  10:14 11:5,6
  23:4
page 3:3 7:7 9:6
  9:9,11,13,17
  9:18,24,24
  10:4,14 11:1
pages 8:11
paid 13:4 16:1
  23:21 24:2,5
  25:3,19
paper 29:4,5
  30:24 33:6
paragraph 7:8
pardon 13:21
park 2:4
part 18:9 21:23
  22:11 28:13
  30:15 32:12
partially 38:5
particular 33:3
  33:3
parties 4:3 50:11
pay 13:11,13,17
  15:9,14 17:8
  25:8 27:14
  32:23 35:2,6,7
  36:10 41:5,15

42:8,12,14
paying 24:22
  25:3,22,23
  26:5
payroll 31:6
pennsylvania
  1:23 40:3,6,8
people 12:7 19:9
  27:9,10 28:21
  28:22 42:23
percent 31:13
  45:6
percentage 45:2
perform 40:5
performed 12:3
period 23:12
  33:15
person 17:11
  26:18 35:10
  44:9
personnel 34:5
persons 36:20
petition 13:6
  18:6
petitioned 18:8
phone 1:24 43:2
  43:8,16,17
pick 15:3 20:13
  20:16,17,18
  30:14 31:16
  38:14 39:12
  46:12,23 47:7
  47:10 48:3,13
  48:18 49:1,7
  49:12
picked 28:3
  30:20 34:12
  38:16 39:5
  45:17,20 46:1
  46:8
picking 30:8
piece 46:13
  47:11,13,16
pike 1:18 2:3
place 26:13

32:12,14 50:7
placed 36:23
plaintiff 1:16
plaintiffs 1:8 2:6
  8:18 9:7,22
please 4:16,22
  9:20 22:23
  31:16
plural 29:22
plus 16:9 25:1
  26:1
po 1:23
point 26:6 46:24
  46:24
policy 16:19
position 6:15
  46:11,14,15
  47:7
posted 30:5,7
  32:17
precluded 13:3
president 6:16
pretrial 1:15
pretty 27:24
previous 32:6
print 31:24 42:7
printed 33:6
  42:3
prior 18:1
privy 18:16
produced 8:20
program 31:19
  31:21,23
progress 28:7
provide 13:18
  20:14,20
provided 30:16
providing 46:15
public 50:23
punch 48:10
put 10:10,11
  15:17,18 22:21
  25:16 34:24
  37:24 42:4,6
  44:10 45:4,5

puts 16:15
putting 11:20

**Q**

question 4:7 7:2
7:4 11:21
13:24 17:15
24:12,19,19
36:10
questioning 5:9
questions 5:13
7:11,14,18 8:4
49:16
quicker 16:3
quite 25:19

**R**

r 1:22
raise 36:17,19
raised 18:1
rate 15:9,14,22
16:6,7,8,20
17:6,9,19,20
18:22 23:10,11
23:16,17,23
24:2,5,22 35:2
35:6 36:11
reading 4:3
realize 43:16
really 6:24 28:2
31:13 42:9
45:4 46:11
reason 12:23
reasons 22:9
recess 41:2
record 4:17 12:5
14:1,3,20,23
23:4
records 12:15
recycling 31:17
referred 32:13
regardless 24:2
regards 46:17
regular 23:22
34:14

relate 42:23
related 50:10
relates 42:24
relative 50:13
relevant 23:12
remember 35:13
35:15
remembering
16:11
rephrase 7:3
26:16
report 21:1
reporter 1:20
50:23
reporting 1:22
1:22
represent 8:6,19
24:24 26:3
represents 5:1
request 44:20,21
require 27:9
required 27:15
requirements
20:12
reserved 4:8
residential 47:3
47:6
residentially
48:14 49:3
residents 47:15
respect 9:16
respective 4:3
response 5:20
12:13 35:20
36:11
restaurant 46:6
return 21:20
37:7,15,15
38:12
returns 38:9
ricciardi 1:20
50:3,22
richard 2:2 4:22
4:23 37:2
42:13 49:11

ride 20:14
right 10:12 13:2
16:5 17:13
20:17 23:3,3
25:17 26:6
31:14 33:11
35:22 38:7
39:14 40:18
44:6,8
rlichtenstein
2:13
road 47:2
route 15:17,18
15:19 21:21
24:4 28:17
30:12,12,16
33:3
routes 28:18
30:10
rules 5:11 13:5,5
russell 2:11
44:19

**S**

s 2:2 3:12
sake 10:10 37:14
sanitation 1:10
5:3 6:13 12:14
27:20 36:9
saturday 19:19
19:22 22:18
45:9
save 33:8,9
saved 32:18,18
32:20
saying 16:6
43:17
says 7:9 12:13
23:6,14 41:20
schedule 27:23
28:4,11,14
31:2,5,11 32:3
32:7,9,16,18
32:22,24 34:15
41:7,15,17,22

42:1,3
schedules 29:3
29:11 30:5,7
30:22 31:19
32:4 33:5,8,12
33:22,23,24
34:23 42:18
44:13,17,21
scheduling
27:19,19
sealing 4:4
seasonality
13:14
second 7:6 8:23
10:4 18:4 34:3
34:24 41:13
42:19,19,23
43:1,21 44:5,9
44:22
secondary 34:1
34:2,13 41:13
section 8:10
see 10:4,5,9
12:13,17 32:10
33:7 43:12
seen 6:4 8:15 9:1
send 30:19 44:19
44:23
sense 16:8 24:21
25:4
september 10:24
24:8
service 12:3 31:9
services 1:22
40:5
set 23:9,10,13
50:8
seven 17:11
sheet 34:2,2,3,24
41:13,14 42:9
43:1 44:5
sheets 34:13
42:19,19,23
44:22
shop 34:7

short 15:17,19
19:23 41:2
shorted 42:12
show 8:5 21:12
28:19 42:5,21
43:14 45:2,13
shows 41:9,10
41:11 46:10,12
side 10:9,9
sign 18:10,12
signature 9:8,13
signed 10:22
11:14 12:20
18:13
signing 4:4
similarly 1:7
single 25:14
sir 10:2 21:3,5
22:6 40:11
47:18
site 20:15,21
28:19 39:11,13
39:16 46:16
sites 39:6,7
situated 1:7
six 19:16,18
sixth 22:17
size 47:23
skip 42:9
skipping 8:9
sleeping 46:17
slimmer 34:11
society 2:4
software 31:19
31:22
sole 6:19,21
solely 9:18
somebody 30:19
42:4,5,14
sorry 7:6 16:18
24:14 32:8
37:8
sort 14:21
south 1:10 5:3
6:12 12:14

ANTHONY COLASURDO

27:20 36:8 37:8,9
**specific** 12:15
**spoke** 35:13 36:21
**spot** 29:1
**start** 20:2 43:15 48:3
**starting** 17:20 43:11
**starts** 20:1
**state** 4:16 5:6
**states** 1:1
**stay** 40:10
**stipulated** 4:1
**straight** 13:13 14:6 16:9
**street** 31:16 47:8
**struggling** 44:12
**stuff** 20:11
**subsequent** 13:6
**suite** 2:4
**supervisor** 27:21 43:9,11
**supplied** 7:17
**suppose** 25:12 29:19 41:20
**sure** 11:18 13:20 22:22 24:16 25:2,11 26:13 27:13 28:2 33:17 38:23 46:13
**surrounding** 48:18,19
**swartz** 1:17 2:2 2:3 3:5 4:15,22 4:24 6:1 7:19 7:24 10:19 11:13 14:12 17:16,18 24:20 40:20 41:4 44:19 45:1 48:22
**swartzlegal** 2:5

**swidler** 1:17 2:2 4:24
**sworn** 4:10 50:6
**system** 11:23 12:4 14:11,18

_____
**T**
**t** 3:12
**take** 5:10 17:3 29:2 34:7 38:1 40:24
**taken** 1:16 6:9 41:3 50:12
**takes** 22:3
**talking** 12:5,6,9 14:19 20:6 23:8 26:17
**telephone** 35:12
**telephonically** 35:10
**tell** 28:2
**term** 12:10 15:7
**terms** 44:10
**terrified** 40:16
**testified** 4:11
**thank** 49:16
**thats** 33:11
**thing** 26:16,17 35:22
**things** 10:8 43:19
**think** 5:1 6:6 12:10 13:23 14:13 15:16 19:6 28:5,5 39:24,24 42:18 44:3,11,11 48:8
**third** 2:11 26:18
**thought** 13:22 28:20
**three** 16:24 27:7 27:10 30:2 42:11
**throw** 15:6

**thrower** 12:16 14:21,24 15:7 17:7,10 22:13 24:1,3 25:21 29:12 30:11 32:12,13 37:24 38:9 41:6,8,16 46:10 47:5,14 47:16
**throwers** 5:2 12:6,9,12 14:19 18:5,8,9 18:10,18,24 20:4,5,13,15 21:12 22:10 23:9,15,18 25:18 26:7 27:23 29:15,17 29:21,22,23 30:9,20 31:3 32:23 37:19,21 37:23 38:12,13 38:14 39:20 41:9,10,18 42:22,23 45:2 45:7,11 47:9
**time** 4:8 12:20 15:8 16:9 20:10 23:12,22 24:6 25:6,24 27:1 28:16 29:8,9,10 33:15 34:14 35:19 43:13,14 46:23 49:17 50:7
**times** 23:23 24:23 46:4
**tire** 43:14
**titled** 8:18
**today** 4:19,24 5:10,19 7:13 12:22 24:10,16 32:7,8,9,21,22 44:1,7

**told** 35:3
**topics** 7:11,12
**tovilla** 1:4
**town** 46:8 47:8 47:14,21,24
**towns** 47:22,24
**track** 11:24 22:4 48:4,6
**traffic** 43:15
**train** 13:22
**transcript** 10:10 14:23 50:5
**transient** 28:1
**transportation** 20:16,20 46:16
**trash** 12:7,8 15:3 31:17 34:11 38:21 39:1,5 39:11 46:13,23 47:11,13,16 48:3,13,18 49:1,7
**trenton** 35:24 36:1 37:12
**trial** 4:8
**trouble** 36:6
**truck** 15:3,5,7 21:24 22:3 29:12,16,20,23 30:14 31:11 37:18,22,24 38:4,5,10,19 38:21,24,24 39:2,4 46:17 46:19,20,22 47:5,10,19
**trucks** 20:7,22 37:7,15 40:8 40:10,15,21 47:3
**true** 50:4
**truthfully** 5:16
**try** 42:8
**trying** 44:10
**turn** 10:3,3

**twice** 35:17
**two** 10:8 11:7 13:16 16:10,14 16:24 23:22 25:4,14 26:2 29:23 30:2 37:11 40:24 44:14
**type** 31:24 33:10
**typed** 32:2
**typical** 17:19 19:16 47:19

_____
**U**
**uhhuh** 45:12
**underneath** 29:21
**understand** 5:17 5:19,21 6:7 7:1 7:2,4,5 19:21 27:11 37:6 38:23 42:16 44:11 45:10
**understanding** 18:15,17
**understood** 7:4 22:22
**union** 13:2,5,6 18:1,10
**unionized** 18:6
**united** 1:1
**unskilled** 26:9
**use** 11:19 16:5 18:4 19:13 42:20,21
**uses** 11:23
**utilize** 34:10

_____
**V**
**vast** 14:4
**vehicle** 20:11
**verified** 10:23
**versus** 37:9
**vicinage** 1:2
**vineland** 38:13

ANTHONY COLASURDO

38:14,16,18
39:13,15 46:9
46:9
**violations** 5:5,6
**vs** 1:9

**W**
**wage** 5:5,5,6
13:13,14,18,20
14:7,9 15:8,11
23:20,22,23
24:23 25:6,20
25:24,24 26:9
26:23,24 27:1
27:16 35:5,9
35:23
**wagenheim** 2:10
**wait** 38:2
**waived** 4:6
**walk** 26:13
**walmart** 46:5
**want** 10:20
11:18 14:9
16:5 19:18,19
19:20 22:21,22
24:15,15 25:2
25:9 26:7
27:10,12,13
38:2 42:9 46:5
46:6,7
**wanted** 35:7,8
43:4
**wants** 38:1
**way** 37:6 48:9
48:11
**week** 12:2 16:13
16:24 17:8,11
17:12 19:7,15
19:15,16,16,17
25:1,5,16 26:4
26:5,24 27:7
27:23,24 29:6
29:8 32:20
33:10,10 34:20
36:14 41:6

43:6
**weeks** 14:13
19:9 32:7,15
32:24
**william** 1:4
**winds** 31:11
**withdrawal** 13:7
**witness** 3:3
10:17 11:9
14:4 40:19
49:19
**wont** 13:12
14:10
**word** 13:2 16:5
21:8
**words** 22:21
26:21 47:21
**work** 6:12 12:2
13:15 15:2,13
15:20,24,24
16:1,3,4,13,14
16:21,22,23
17:6,8 19:7,9
19:18,19 20:18
22:14,17 23:18
24:3 25:16,23
26:11,24 27:6
27:7,7,9,10,14
28:1,6,6,23
29:19 31:5
36:14,22 38:13
38:17 42:10,11
45:8 46:18
47:9,18 48:2,5
**worked** 12:1,16
17:10 41:23
42:2 48:7
**working** 28:3,12
46:11
**works** 17:7,11
22:13 25:21
**wouldnt** 19:7
46:20
**write** 32:1
**writing** 44:20,24

**X**
**x** 3:1,12 16:16
25:20
**xyz** 47:8

**Y**
**yard** 22:11
45:19,22,23,24
48:9,12
**yeah** 21:18
34:16 39:21
42:6 43:11
45:14 48:15
**year** 9:3 10:22
10:22 11:17
13:21 44:13
**years** 17:22 28:9
30:12 33:13,14
35:17 44:14
**york** 40:12,13,15
40:16
**young** 44:7

**Z**

**0**
**00** 43:7,10
**08003** 2:4

**1**
**1** 1:8,19 11:22
12:13 19:24
22:24 23:2,5,6
23:23 26:21
34:6
**10** 2:4 17:7
23:18 25:5,21
25:24 27:1
45:13,16
**100** 17:21 18:2
18:22 19:10,11
22:13,18 26:4
31:12
**105** 19:12
**10cv05647** 1:8

**110** 19:12
**1125** 2:11
**12** 19:23
**1372** 1:23
**13th** 31:16
**1878** 1:17 2:3
**190581372** 1:23

**2**
**2** 9:17,18,24,24
10:14 21:22
34:8 49:20
**2011** 10:24 24:8
33:18,21
**2012** 1:13 24:11
33:19,20
**2159467009** 1:24
**2159491867** 1:24
**25** 24:24 45:6
**28** 37:13
**290** 24:24 25:1

**3**
**3** 9:6,9 34:10
**30** 5:20 6:4,7 7:7
20:1,3,10 21:4
21:16 43:13
**35** 17:12

**4**
**4** 3:5 9:11,13
20:1
**40** 13:16 15:12
16:16,22 17:11
25:16,23 26:23
26:24 27:8
36:14 45:10,11
**400** 26:3

**5**
**5** 3:14 20:8,10
21:4,16,23,24
23:23 43:2,7,7
43:10,13
**50** 17:8 25:22
26:24

**500** 22:14 26:5
**55** 1:19
**56** 13:17 49:20

**6**
**6** 5:20 6:4,7 7:7
10:24 20:2,3
43:13
**60** 47:1
**600** 22:18
**6093443161** 2:12
**676** 39:10

**7**
**7** 3:15,16 24:24
**798** 47:8

**8**
**80** 19:3
**85** 19:5
**8566857420** 2:5

**9**
**9** 1:13 24:11
**90** 17:21 19:10
**98401** 2:12